428 So.2d 449 (1983)
STATE of Louisiana
v.
Edmond BURKHALTER.
No. 81-KA-0200.
Supreme Court of Louisiana.
February 23, 1983.
*450 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John Craft, William M. Campbell, Jr., Leon Cannizzaro, Asst. Dist. Attys., for plaintiff-appellee.
Dwight Doskey, Howard McCurdy, Orleans Indigent Defender Office, New Orleans, for defendant-appellant.
CALOGERO, Justice.
Defendant Edmond Burkhalter was charged with the first degree murder of John Bonnell, a sergeant with the St. Tammany Parish Sheriff's Office participating in a narcotics undercover operation. During negotiations with defendant to purchase $125.00 worth of cocaine, Bonnell was shot and killed in the Desire Project in the City of New Orleans. Burkhalter was apprehended and later confessed. Defendant *451 was charged by grand jury indictment[1] with first degree murder in violation of La.R.S. 14:30(2).[2] He entered a not guilty plea on August 8, 1979. On December 14, 1979, defendant's motion to suppress his confession was denied. Burkhalter was found guilty of second degree murder by a unanimous twelve person jury. On March 28, 1980, defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence.
Burkhalter now appeals his conviction arguing six assignments of error, none of which are meritorious. Defendant's conviction and sentence are therefore affirmed.
At trial the state adduced the following facts through the testimony of David Vickers.[3] On July 8, 1979, Vickers and John Bonnell, a sergeant with the St. Tammany Parish Sheriff's Office, met with defendant in Slidell in an attempt to purchase a gram of cocaine from him for $125. Apparently Bonnell had given $125 to the defendant who was then to meet Vickers and Bonnell at a set location. When defendant arrived he told the pair that he did not have the cocaine or the money because his connection felt that he had something to do with a recent drug "bust" in Slidell and that the police were following the pair. Bonnell then told Burkhalter that "if he didn't have his `coke' or his money he was going to beat him up." Burkhalter told the pair he would again attempt to procure the cocaine. However, when he showed up again he told the pair that he could not obtain any coke for them and that he would get in touch with them later. He also told them that he was going to get a gun.
On the evening of July 9th, as a result of a phone call to defendant, Bonnell and Vickers went to meet him at Roy Jenkins' house in Slidell.[4] Vickers, Bonnell, Jenkins, and Burkhalter all went into Bonnell's car to get the coke. Bonnell was driving, with Vickers in the front passenger seat. Burkhalter was sitting behind Bonnell, with Jenkins behind Vickers. The group proceeded to drive, at Burkhalter's direction, to the Desire Project in New Orleans. After driving around the project for some time Burkhalter directed Bonnell to park the car in a darkened alley in the project. After the car was parked, Jenkins exited on the right hand side of the car and Burkhalter on the left side. At least two shots were then fired, one of which struck Bonnell over his left ear, and exited near his right eyebrow, killing him. Another shot struck Vickers in the shoulder, passing through him. Vickers was able to seek help and the NOPD was called to the scene.
Bonnell was found lying across the front seat of the car with a small caliber automatic, which he normally kept in an ankle holster, held loosely in his hand.[5] Vickers stated that Burkhalter was the one who shot Bonnell and that the shooting was not immediately preceded by any threats to Burkhalter. Vickers stated that when Bonnell was shot, he was unarmed, looking at the car radio, not at Burkhalter. This assertion was corroborated by the coroner's testimony that Bonnell could not have seen the gun when the fatal shot was fired.
Burkhalter was apprehended later that night and provided a confession to the shooting, wherein he stated that he was afraid of Bonnell, who he claimed had *452 threatened to kill him over the $125. Burkhalter stated that Jenkins had told him that Bonnell always carried a .45 caliber gun and that Burkhalter would probably kill him if he did not kill Bonnell first. Burkhalter claimed that when they parked in the project Bonnell had a pistol in his hand and threatened to kill him if he did not come back with the drugs or the money. He admitted, however, that Bonnell never pointed the gun at him. Burkhalter admitted that he shot twice at Bonnell as Bonnell sat in the car waiting for him to get the cocaine. He stated that he was aiming to shoot Bonnell in the back, just below his neck and did not know that one bullet struck David Vickers. As Burkhalter stated: "I had to shoot him or he would have killed me." Burkhalter stated that he was not aware that Bonnell was a policeman at the time he shot the officer.

ASSIGNMENT OF ERROR NO. 1
By this assignment defendant contends that the trial court erred in denying his motion for mistrial on the grounds that the state in closing argument made an indirect reference to the defendant's failure to testify in his own defense.
During the state's closing argument the following took place:
MR. MC NARY:
You heard, ladies and gentlemen, from Detective Genovese, who took the statement from the defendant. That statement has to be taken by you, again, with a view toward your common sense. You must decide what to believe in that statement, what not to believe. The fact remains that statement was taken. That was evidence in this case that I presented to you. You must interpret that evidence. Again, in that statement, the defendant admits that it was indeed he who killed John Bonnell, and he who shot David Vickers.
Finally, ladies and gentlemen, you heard from David Vickers, the only other man in this courtroom, other than this man, Edmond Burkhalter, who actually knows what did go on.
MR. ZIBILICH:
Objection. Move for a mistrial.
THE COURT:
Denied.
MR. ZIBILICH:
Note an assignment of error.
BY MR. MC NARY:
the only man who, in this courtroom right now, was present at that time, other than the defendant, was David Vickers. David's story, I would submit, corroborates, in the most part, with exactly what the defendant said in his statement. He related to you how a cocaine buy was set up, various maneuvers and transactions that led up to a trip out of St. Tammany Parish into the project, into the Desire Project.
Although defense counsel simply moved for the mistrial without stating his grounds as required by La.C.Cr.P. art. 841, the thrust of his objection was apparent and understood by the trial judge. Defense counsel's contention, presented in brief, is that the comment by the prosecutor amounted to an indirect reference to defendant's failure to testify that was intended to call the jury's attention to the fact that defendant remained silent at trial.
La.C.Cr.P. art. 770 provides that upon request of the defense, the trial court shall declare a mistrial when a remark made by the district attorney refers directly or indirectly to "[t]he failure of the defendant to testify in his own defense...." This Court discussed the article in State v. Fullilove, 389 So.2d 1282, 1283-84 (La.1980):
This rule safeguards a defendant from unfavorable inferences which might otherwise be drawn from his silence, thereby implementing the Fifth Amendment's protection against self-incrimination. Even without this statute, however, a prosecutor would not be free to comment upon the defendant's failure to take the stand, for the United States Supreme Court recognized in 1965 that such remarks violate the self-incrimination clause of the Fifth Amendment, Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, *453 14 L.Ed.2d 106 (1965); made applicable to the states through the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964).
We further stated:
The purpose behind the rule embodied in article 770(3) is to prevent attention from being drawn to the fact that the defendant has not testified in his own behalf. When the remark directly points out that the defendant has not testified, it is irrelevant whether the prosecutor intended the jury to draw unfavorable inferences from defendant's silence. See State v. Johnson, 345 So.2d 14 (La.1977).
* * * * * *
This court will inquire into the intended effect on the jury only to distinguish between indirect references to the defendant's failure to testify and statements that the prosecution's case is unrebutted. State ex rel. Clark v. Marullo, 352 So.2d 223 (La.1977); State v. Frank, 344 So.2d 1039 (La.1977); State v. Reed, 284 So.2d 574 (La.1973); State v. Bentley, 219 La. 893, 54 So.2d 137 (1951); State v. Antoine, 189 La. 619, 180 So. 465 (1938). The latter reference is generally permissible.
Although the legal discussion is pertinent, the comment in the state's closing argument in Fullilove is distinguishable from that in the instant case. There the prosecutor stated that "this man has been afforded his constitutional right. He has been afforded the right not to take the stand." 389 So.2d at 1283.
In State v. Perkins, 374 So.2d 1234 (La. 1979), we found impermissible a reference to testimony as uncontroverted when the defendant was the only person who could dispute the testimony given.[6] Thus we held that such a reference focused the jury's attention on the defendant's failure to testify. Perkins, with its clear focus on the defendant actually taking the stand in order to show that the witness who did testify had perjured himself, is also distinguishable from the instant case.[7]
Also misplaced is defendant's reliance upon State v. Carney, 334 So.2d 415 (La. 1976). In that case, after finding reversible error, this Court went on to say that one of the prosecutor's closing comments was an indirect reference to the defendant's failure to testify. The prosecutor had stated: "For some reason, reasons we are not privileged to knowand only the defendant knows" 334 So.2d 419. The court in a divided opinion[8] found this to be a prohibited indirect reference to defendant's failure to testify.
More relevant to the instant case, and on point, is State v. Smith, 327 So.2d 355 (La. 1976) (on rehearing). In Smith the prosecutor in argument stated that the only man who knew what went on in the room, which was the site of the robbery and killing, was the man who walked out of the room with the gun.[9] In discussing the requisites in order to mandate a mistrial when an indirect reference to the defendant's failure to *454 testify is involved, we stated: "In order to mandate a mistrial we have said that the inference must be plain that the remark was intended to bring to the jury's attention the failure of the defendant to testify." (citations omitted) 327 So.2d at 362. See also State v. Stephenson, 412 So.2d 553 (La. 1982). Thus we held that in the context of the district attorney's entire argument, the statements were not intended to call the jury's attention to defendant's failure to take the stand.
Similarly in this case we find no evident intent on the part of the prosecutor to focus attention upon defendant's failure to testify.
As earlier recited in this opinion, defendant in his inculpatory statement had admitted firing about two shots at the head of Officer Bonnell. According to Burkhalter, his reason for doing so was a fear that Bonnell was armed with a .45 and was about to shoot him. The only witness other than defendant and the accomplice Roy Jenkins, also charged with the crime, was David Vickers, the victim's confederate.
The prosecutor was discussing Burkhalter's inculpatory statement. He sought to emphasize defendant's having admitted the shooting, while de-emphasizing, or disputing, defendant's asserted justification for the event. He was urging the jury to accept that defendant did the shooting and to accept Vicker's version that Bonnell was unarmed and no threat to Burkhalter when the shooting took place. In this context the prosecutor discussed favorable state evidence. He noted, appropriately, that Vickers was the only person in the courtroom other than Burkhalter, who knew what really transpired, and he recited Vickers' version of the events.
In this context the prosecutor's remark was not intended to focus on the defendant's not taking the stand at trial. Rather he was asking the jury to compare the respective versions of the defendant and the witness Vickers concerning what had taken place at the moment of the shooting, and to accept the version recited by Vickers. The reference was neither a direct nor an indirect reference to the defendant's failure to testify. Thus the judge's refusal to grant a mistrial did not constitute reversible error.
This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NOS. 2, 4, AND 5
By these assignments defendant contends that the trial court erred in denying his motion to suppress an inculpatory statement. Burkhalter essentially argues that his statement was made under duress after he had been severely beaten by police officers during his arrest and interrogation, and that it was not freely and voluntarily given.
From testimony at the motion to suppress hearing and at the trial, the following facts concerning defendant's arrest were ascertained. At approximately 3:00 A.M. on July 10, 1979, defendant and two others were apprehended while they were driving in the 4400 block of Dale Street in New Orleans. According to the testimony of Sergeant Herman of the St. Tammany Parish Sheriff's Office, Burkhalter was ordered to get out of the car. He came out fighting and one New Orleans police officer was struck in the face. Sergeant Herman was cut on his left hand as he attempted to pull defendant from the vehicle; Burkhalter was wielding a small knife. Herman then hit Burkhalter over the head with his gun; defendant went down but came up wrestling. Several officers had to wrestle him to the ground.
Before a confession or inculpatory statement can be introduced into evidence, the state has the heavy burden of proving affirmatively and beyond a reasonable doubt that it was free and voluntary. The defendant must have given the statement free of the influence of duress, fear, threats, inducements or promises. La.R.S. 15:451; State v. West, 408 So.2d 1302 (La. 1982); State v. Dewey, 408 So.2d 1255 (La. 1982); State v. Henry, 352 So.2d 643 (La. 1977). The admissibility of a confession is in the first instance a matter for determination by the trial judge. His conclusions will *455 not be disturbed unless they are not supported by the evidence. State v. Campuzano, 404 So.2d 1217 (La.1981); State v. Castillo, 389 So.2d 1307 (La.1980), cert. denied 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1980). In reviewing the trial court's ruling on defendant's motion to suppress, this Court looks to the totality of the evidence presented at the motion to suppress hearing and the trial. State v. West, supra.
At the hearing on the motion to suppress, defendant testified that during his apprehension he was dragged from a car and beaten in the middle of a street for over an hour. He denied signing his rights of arrestee form and his confession; he contended that his hands were so "busted up" that a police officer held his hand and signed those papers. Burkhalter claimed that he did not have his glasses, without which he could not read, and that his eyes were half-closed from the beating and full of blood. Defendant stated that he had requested a doctor, but was told that he would see a doctor only if and after he gave a statement. On cross-examination Burkhalter denied wielding a knife or cutting a police officer during arrest. He denied not only signing the confession, but making the statement at all. Defendant alleged that the interrogating officer, Detective Genovese, punched him "all over" while he was being interrogated at the detective bureau.
Burkhalter contends principally, then, that he was beaten at the time of his arrest although he did not resist, and again during interrogation. He claims that in his weakened physical state, because of bleeding injuries, especially one at the back of the head, and a pre-existing asthma condition, he was not able to resist when an officer took his hand and signed the confession and rights form for him.
Defendant's testimony was, however, contradicted. Danny McGee, who was arrested with Burkhalter and whose testimony was presented at the motion to suppress hearing by the defendant, stated that the arrest event beating, rather than having covered the period of an hour, did not last long.[10] Sergeant Herman, one of the arresting officers, testified that Burkhalter had been struck over the head only after he cut the officer with a small knife during a struggle with officers to avoid arrest. Detective Genovese testified that Burkhalter was no longer bleeding and was in good condition when the interrogation began at about 4:20 a.m.; he asserted that defendant, who told the officer that the injuries were received during his arrest, was not struck or beaten at all at the detective bureau. Detective Genovese stated that Burkhalter had been asked if he required medical attention, to which he replied that he did not need to go to Charity Hospital. Genovese also testified that Burkhalter was allowed to use the restroom and was given water; defendant had not been denied any privileges.
Defendant Burkhalter's inculpatory statement, signed by him and admitted at trial over defendant's objection, expresses that Burkhalter was advised of his rights and that he had not been beaten, threatened or coerced into making a confession. Burkhalter had also signed his arrestee rights form. Detective Genovese's testimony at trial was essentially the same as that given at the motion to suppress hearing. The officer consistently asserted that Burkhalter had been advised of his rights, that he had not been struck or beaten at the detective bureau, that defendant was in good physical condition, that defendant had *456 not requested medical treatment and that defendant had given a voluntary statement. Officer Spiess, who was also present during the interview with Burkhalter, essentially corroborates Genovese's statement of facts. Defendant's allegation that he was beaten for over an hour during his arrest was discounted by the testimony of a fellow arrestee, McGee, as well as by that of one of the arresting officers, Sergeant Herman, who testified that Burkhalter was struck only as was necessary to physically subdue him.
While defendant was no doubt struck and otherwise physically restrained at the time of his arrest, he had provoked the violence by resisting arrest and by attacking the arresting officers. The trial judge apparently concluded that the conduct of the police was not excessive under the circumstances, and that no force or violence took place after defendant was subdued. Burkhalter did not give his statement until hours later, hours during which there were no threats, physical violence or coercion on the part of police officers. There is ample evidence that when defendant made his statement at the detective bureau, he did so knowingly and voluntarily after being advised of his rights. An overview of the entire record prompts the conclusion that the trial judge did not abuse his discretion.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment defendant contends that the trial court erred in denying his mistrial motion based upon a "highly prejudicial reference" to the decedent's wife and family during the state's inflammatory rebuttal argument. The allegedly offensive portion of the argument follows:
Again, from the statement, "Why did you shoot John?" "I aimed at the back of him, just below the neck." Is that consistent with someone acting in self-defense, to aim at his back, just below the neck, or is that a cold-blooded execution, ladies and gentlemen? That is like putting a lame horse out of his misery, when you walk up behind him and aim a .38 at the back of his head. This wasn't a horse. This was a twenty-four year old man with a family and a little daughter, a wife and little daughter. He's dead now and he's not coming back.
At the close of the state's rebuttal outside the presence of the jury, defense counsel moved for a mistrial based upon the reference to the decedent's family about which no evidence had been presented. The motion was denied; defense counsel did not request an admonition.
While the prosecutor's comment that the victim had a wife and a little daughter was arguably inappropriate because, among other reasons, it was beyond the evidence introduced at trial, denial of defendant's mistrial motion with the absence of an unrequested admonition to the jury to disregard the comment does not constitute reversible error. In addition to the fact that La.C. Cr.P. art. 770 does not mandate a mistrial for such a comment, the prejudice from such a remark in this case is non-existent.
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment defendant contends that he was denied effective assistance of counsel. He cites instances in closing argument where his appointed counsel stated: (1) that at most his client was guilty of second degree murder which exposed him to a life sentence, and (2) that the jury's focusing deliberation would not likely be upon whether defendant fired the shots but upon whether defendant specifically intended and knowingly and willfully killed the peace officer in the line of duty with knowledge that he was a police officer.
Normally on appeal we do not address assignments relative to ineffective assistance of counsel, relegating such contentions to post conviction relief applications in the district court. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Brown, 384 So.2d 983 (La.1980); State v. Deloch, 380 So.2d 67 (La.1980).
*457 In this case the absurdity of the argument prompts our determining now that the assignment is non-meritorious.
Defendant was on trial for first degree murder for having killed a police officer in the line of duty. He was convicted of only second degree murder. Upon conviction for first degree murder, the jury would have been called upon to decide whether defendant should live or die. Defendant's lawyer succeeded in saving defendant from execution, no doubt in no small measure because of tactical decisions in trying the case like the arguments to which defendant now takes exception.
The assignment of error is without merit.

Decree
For the foregoing reasons defendant Burkhalter's conviction and sentence are affirmed.
AFFIRMED.
DENNIS, J., concurs.
NOTES
[1] The Orleans Parish grand jury returned an indictment of first degree murder against both Roy Jenkins and Edmond Burkhalter. Prior to trial Burkhalter's case was severed from that of Jenkins.
[2] La.R.S. 14:30(2) defines first degree murder as the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties...."
[3] Vickers had been incarcerated in the St. Tammany Parish jail on burglary charges but was allowed by sheriff officers to participate in a narcotics undercover operation.
[4] Bonnell was outfitted with a body mike on the evening of July 9. It was being monitored by two plain clothes narcotics officers in the area. However, they lost contact with Bonnell when the car left the Slidell area.
[5] Bonnell also kept a .45 caliber revolver in the glove box of the car.
[6] In Perkins the prosecutor was attempting to buttress the confused and unclear testimony of a state trooper when he stated:

The party who claims this witness is either making up a case on this guy or forgetful of facts involving this case and other cases, the person who questions that has an opportunity to get up there and show this man perjured himself. Until that is done, he enjoys the presumption that what he said is true.
374 So.2d at 1237. See also State v. Harvill, 403 So.2d 706 (La.1981).
[7] Also distinguishable is the other case incorrectly cited by defendant in brief as State v. Williams. The actual case, State v. Valentine, 375 So.2d 1378 (La.1979) involved the following statement by the assistant district attorney: "... If Mr. Valentine wants to testify to it, he has a right to get up and do it...." 375 So.2d 1379.
[8] There were three dissents and two concurrences, the concurring justices adhering to the opinion only with respect to the finding of merit in the other assignment of error not related to the motion for a mistrial.
[9] In Smith the district attorney stated:

Who knows what went on in this room besides the man who's seated right here and the two dead boys. Albert Lewis, as I said, can say what happened, but they can'tI don't know the position they were in in that cooler. One man does and that's the man who walked out of there with that gun. 327 So.2d at 362.
[10] Danny McGee's testimony on this point was:

THE COURT:
A. And how long did they beat on these men?
A. They didn't beat on them too long because they had a whole lot of people come out there and the police kept telling everybody to go back inside, and then they put the handcuffs on us and they put all three of us in the police squad car.
THE COURT:
And from the time that you were stopped by the police and you were pulled out of the car until the time you were put in the back, handcuffed in the police car, how long did that take?
A. About fifteen minutes, something like that.