451 So.2d 59 (1984)
STATE of Louisiana
v.
Clarence SLAUGHTER.
No. KA-1246.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 1984.
*60 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Wilfret R. McKee, New Orleans, for defendant-appellant Clarence Slaughter.
Before KLEES, CIACCIO and LOBRANO, JJ.
KLEES, Judge.
On December 29, 1982, the defendant, Clarence Slaughter, was charged by bill of information with knowingly possessing a vehicle from which the manufacturer's vehicle identification number had been removed in violation of R.S. 14:207[1], and with receiving a stolen vehicle valued at $1000.00 in violation of R.S. 14:69.[2] He was arraigned on January 13, 1983, and pled not guilty on both counts. On April 18, 1983, a six member jury found him guilty as charged on both counts. He was sentenced on April 21, 1983 to serve three years in Parish Prison for his 14:69 conviction and to serve one year in Parish Prison for his 14:207 conviction, both sentences to run concurrent. From these convictions he appeals.
FACTS
On February 11, 1982, Trooper Philip A. Stanford and his partner went to the Slaughter Auto Parts Store located at 3423 Carondelet Street with a warrant for the arrest of the defendant, Clarence Slaughter. The store was closed when the troopers arrived, but as they started to leave they noticed a man who looked like Slaughter drive by the store in a white Mercedes. The troopers stopped Slaughter and ordered him out of the car. Upon confirming he was Clarence Slaughter, the troopers placed him under arrest and advised him of his Miranda rights.
The troopers searched Slaughter for weapons and found a key ring with many keys, one of which was the key to the shop. The troopers then produced a search warrant *61 for the shop and entered. They found three vehicles inside the shop, one of which was an orange 1973 Volkswagon with a green lid on the trunk. Upon looking through the windshield they noticed that the vehicle identification number (VIN) plate located on the dashboard had been altered. The plate looked crooked and was secured by an American rivet, not a foreign rivet. When they checked the VIN plate on the driver's side doorpost (also known as the Federal Certification Sticker), they noticed that the number on the dashboard did not match the one on the doorpost. However, by looking at the "confidential" number on the Volkswagon located somewhere under the rear seat, the troopers determined that the number on the doorpost was the correct number.
A number of cars were parked on the lot outside the shop, including a stripped salvage vehicle, or "shell". The troopers discovered that the number on the Federal Certification Sticker on the doorpost of the "shell" matched the one on the VIN plate located on the dashboard of the Volkswagon. Upon receiving no response from Slaughter as to whether the Volkswagon was his, the troopers ran a check on the real VIN of the Volkswagon and learned it was a stolen vehicle. A check of the VIN of the "shell" failed to produce the identity of its owner.
Trooper Stanford testified that Slaughter told him that he did all the work at the shop. Stanford, who was qualified as an expert in the detection and investigation of vehicle identification numbers, testified that VIN plates are generally switched on stolen vehicles so that a vehicle can then be registered and sold without anyone knowing it was stolen. While at the shop, Stanford noticed hanging on the shop's wall little metal plates that are normally placed by the vehicle's manufacturer in the hood compartment. Stanford testified that in his opinion the fact that these plates had been taken out of vehicles showed that Slaughter knew where vehicle identification plates were located.
Ulysses S. Washington testified that his 1973 orange Volkswagon was stolen on February 4, 1982. On February 12, he was notified by the State Police that his car had been recovered. Upon picking up the car, he noticed that the trunk lid had been replaced with a green trunk lid. The VIN on his bill of sale for the car did not match the VIN plate on the dashboard of the car, but it did match the number on the doorpost. The defense stipulated that the 1973 Volkswagon recovered from the auto parts shop was the car stolen from Washington. Washington also testified that the value of the Volkswagon at the time of the theft was $1000.00. He did not give Slaughter permission to take the car.
Clarence Slaughter, the defendant, testified that he was only one of three men who worked at the shop, although he was the only one named Slaughter. He testified that he had not worked on the Volkswagon and he did not know who had done so. All three of the employees had keys to the shop.
Slaughter denied telling Trooper Stanford that he did all the work at the shop. He maintained that he had never removed or switched VIN plates. He admitted that he had a prior conviction for possession of cocaine for which he was still on probation.
1. Sufficiency of Evidence
Although not alleged as an assignment of error, the sufficiency of evidence to support appellant's conviction must be reviewed as per State v. Raymo, 419 So.2d 858 (La.1982). In assessing the sufficiency of evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
An additional standard is applied in cases where the conviction is based upon circumstantial evidence. This standard, as set forth in R.S. 15:438, provides that such *62 evidence must exclude every reasonable hypothesis of innocence. The Court, in State v. Shapiro, 431 So.2d 372 (La.1983), has held that this statutorily-mandated standard must be applied independently and in addition to the Jackson standard used to review the sufficiency of evidence in purely direct evidence cases. 431 So.2d 372 at 385; State v. Graham, 422 So.2d 123, 129 (La.1982).[3]
Appellant was convicted of receiving stolen things in violation of R.S. 14:69. In State v. Walker, 350 So.2d 176, 177 (La.1977), the court enumerated the four essential elements that must be proven to sustain a conviction of this crime: (1) that the item was stolen; (2) that the item was of value; (3) that the defendant knew or should have known the property was stolen; and (4) that defendant intentionally procured, received, or concealed the property. The Court has also held that the mere possession of stolen property does not create a presumption that the possessor knew or had good reason to believe it was stolen. State v. Ennis, 414 So.2d 661 (La.1982); State v. Walker, 374 So.2d 1223 (La.1979); State v. Walker, 350 So.2d 176 (La.1977).
In the case at bar, it was shown that a stolen 1973 Volkswagon worth $1000.00 was found inside the appellant's auto parts shop. Although the appellant testified he was not the only worker at the shop, Trooper Stanford testified that the appellant told him he did all the work in the shop. Trooper Stanford also testified that he could see through the windshield that the VIN plate on the dashboard had been altered. The troopers further found that this plate had come from another vehicle on the premises where the shop was located. Using both the Jackson and the circumstantial evidence standards, the jury could have excluded every reasonable hypothesis of innocence to find the appellant guilty of receiving stolen things of a value of $500.00 or more.
The appellant was also convicted of knowingly possessing a vehicle from which the VIN plate had been removed for the purpose of misrepresenting its identity, in violation of R.S. 14:207. The original VIN plate on the dashboard of the Volkswagon had been removed and replaced with a different VIN plate that had come from a "shell" of a vehicle parked in the lot outside the shop. The officer testified that the appellant admitted that he did all the work at the shop. Again using the Jackson and the circumstantial evidence standards, the jury could have excluded every reasonable hypothesis of innocence to convict the appellant of a violation of R.S. 14:207.
2. Assignments of Error
By his first assignment of error, the appellant contends that the trial court erred by allowing the arresting officer to testify as to an oral incuplatory statement allegedly made by the appellant at the time of his arrest. Over defense objection, Trooper Stanford testified that Slaughter told them he did all the work at the shop. When asked where missing VIN plates were, Slaughter replied he did not know. When asked the whereabouts of a certain section of the flooring of a car containing a confidential VIN plate that had been removed from the car by a cutting torch, Slaughter told Stanford that Stanford "probably knew" where it was.
Prior to this testimony, Trooper Stanford testified that when he arrested Slaughter, he fully advised the appellant of his Miranda rights. Slaughter then made these statements. Stanford testified that the troopers did not force, beat or intimidate Slaughter, nor did they make any promises to elicit this statement. The trial judge then ruled that the statement was admissible.
The Louisiana Supreme Court has held that the trial court's determination of a confession's admissibility will not be disturbed *63 "unless not supported by the evidence." State v. Harper, 430 So.2d 627, 633 (La.1983); State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Dewey, 408 So.2d 1255 (La.1982). When reviewing the trial court's determination of admissibility, the reviewing court may look to the totality of evidence presented at the suppression hearing and at the trial itself.
The State has the burden of proving that the statement was freely and voluntarily given. In order for a statement made in custodial interrogation by an accused person to be admissible, the State must prove that the accused had been advised of his Miranda rights and that he waived his right to counsel prior to the interrogation.
In the case at bar, Trooper Stanford's testimony does establish that the appellant's statements were freely and voluntarily given. We conclude that the trial court did not abuse its discretion by so ruling.
In his brief, the appellant mentions C.Cr.P. art. 768 which mandates that unless the defendant has been granted pretrial discovery, the state must advise the defense in writing prior to the state's opening statement of its intent to introduce a confession or inculpatory statement. The record before this court contains the required notice. Thus, this assignment of error has no merit.
By his second assignment of error, the appellant requests a review of the record for errors patent. Our review reveals that there are no errors patent.
Accordingly, the conviction and sentences are hereby affirmed.
AFFIRMED.
NOTES
[1] R.S. 14:207 provides:

No person shall cover, remove, deface, alter, or destroy the manufacturer's number or any other distinguishing number of identification mark on any motor vehicle or motor vehicle part for the purpose of concealing or misrepresenting its identity; nor shall any person buy, sell, receive, dispose of, conceal, or knowingly have in his possession any motor vehicle or motor vehicle part from or on which the manufacturer's number or any other distinguishing number or identification number has been covered, removed, defaced, altered, or destroyed for the purpose of concealing or misrepresenting its identity.
Whoever violates this Section shall be fined not more than one thousand dollars, or imprisoned for not more than twelve months, or both, and, in default of fine, imprisoned for not more than twelve months additional.
This Section shall apply to all vehicles propelled otherwise than by muscular power, except motor vehicles running upon rails or tracks.
[2] R.S. 14:69, as existing at the time of the commission of the crime, provided in part:

Receiving stolen things is the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Whoever commits the crime of receiving stolen things, when the value of the things is five hundred dollars or more, shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.
[3] Compare State v. Chism, 436 So.2d 464 (La. 1983), and State v. Sutton, 436 So.2d 471 (La. 1983).