# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


**09-1453**


**STATE OF LOUISIANA**

**VERSUS**

**JAMES JONES**

**********

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 8302-05
HONORABLE ARTHUR J. PLANCHARD, PRESIDING
**********

**SYLVIA R. COOKS
JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy and Billy Howard Ezell, Judges.

**AFFIRMED WITH INSTRUCTIONS.**


**John F. Derosier, District Attorney**
**Carla S. Sigler, Assistant District Attorney**
**1020 Ryan Street**
**Lake Charles, LA 70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
    State of Louisiana

**Mark O. Foster**
**Louisiana Appellate Project**
**P.O. Box 2057**
**Natchitoches, LA 71457-2057**
**(318) 572-5693**
**COUNSEL FOR DEFENDANT-APPELLANT:**
    James Jones

**COOKS, Judge.**

<u>_Facts and Procedural History_</u>

In December of 2004, Defendant, James Jones and the victim were living together, when Defendant physically assaulted the victim over the course of three days. During that time, the victim was prevented from leaving their home and beaten, anally raped and stabbed in the chest and thigh. On the fourth day, after the victim's health was in serious jeopardy, Defendant allowed the victim to seek medical care upon the assurance that he would not be implicated in harming the victim. The victim was then taken to the hospital by her neighbors where her injuries were treated both medically and surgically. She was admitted to the intensive care unit for several days during her recovery.

Defendant was charged with attempted second degree murder, violations of La.R.S. 14:27 and 14:30.1, false imprisonment while armed with a dangerous weapon, a violation of La.R.S. 14:46.1, and with forcible rape, a violation of La.R.S. 14:42.1. Following a jury trial, Defendant was found guilty as charged on all three counts. Defendant was sentenced to serve thirty-five years at hard labor for attempted second degree murder, without benefit of probation, parole or suspension of sentence. For forcible rape, Defendant was sentenced to fifteen years at hard labor, five years without benefit of probation, parole or suspension of sentence, to run consecutively to his sentence for attempted second degree murder. Lastly, Defendant was sentenced to five years at hard labor for false imprisonment, to run concurrently with his sentence for forcible rape.

Defendant did not file a motion to reconsider sentence or file a timely motion for an appeal. Defendant eventually filed a *pro se* application for post-conviction relief, seeking an out-of-time appeal. The application was denied by the trial court.

Defendant sought review of the trial court's ruling which was subsequently denied. Defendant then sought writs with the supreme court, and the case was remanded to the trial court for a hearing to determine if he was entitled to an out-of-time appeal. *State ex rel. Jones v. State*, 07-2339 (La. 9/26/08), 992 So.2d 974.

Subsequently, Defendant was granted an out-of-time appeal. Defendant is now before this court on appeal, asserting that the evidence was not sufficient to convict him of attempted second degree murder. For the following reasons, we affirm Defendant's conviction.

### *Assignment of Error*

In his sole assignment of error, Defendant argues the State failed to establish all of the elements to prove he was guilty of attempted second degree murder.

> The standard of review in a sufficiency of the evidence claim is "whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged." *State v. Leger*, 05-11, p. 91 (La.7/10/06), 936 So.2d 108, 170, *cert. denied*, 549 U.S. 1221, 127 S.Ct. 1279, 167 L.Ed.2d 100 (2007) (*citing Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)); *State v. Captville*, 448 So.2d 676 (La.1984). The essential elements of the crime of attempted second degree murder are a specific intent to kill the victim and the commission of an overt act that tends toward the accomplishment of the victim's death. La.R.S. 14:30.1; *State v. Hollingsworth*, 42,317 (La.App. 2 Cir. 8/15/07), 962 So.2d 1183.

*State v. George*, 09-143, pp. 4-5 (La.App. 3 Cir. 10/7/09), 19 So.3d 614, 618.

Defendant contends although he cut the victim with a knife, the State did not show that he possessed the specific intent to kill her or that the act tended toward the accomplishment of her death. As such, Defendant maintains his conviction for attempted second degree murder should be reduced to the responsive verdict of aggravated battery and the case be remanded to the trial court for resentencing.

> Specific intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S.

14:10(1). The specific intent to kill is an essential element of the crime of attempted second degree murder. La.R.S. 14:27, 14:30.1; *State v. Hongo*, 96-2060 (La.12/2/97), 706 So.2d 419. The state does not have to prove specific criminal intent as a fact; it may be inferred. *State v. Maxie*, 93-2158 (La.4/10/95), 653 So.2d 526.

*George*, 19 So.3d at 619.

Defendant maintains the knife wound to the victim's chest did not indicate he had the specific intent to kill as alleged by the State at trial. In support of his argument, Defendant focuses on the size of the wound, stressing that it was small. Defendant refers to the testimony of the treating physician who testified the wound was three-fourths of an inch wide and about one inch deep. Defendant contends the wound was not a "horrific" knife wound. Defendant also asserts the knife did not hit a vital organ, nor was he aiming at a vital organ. Instead, Defendant contends, an opening was created in the chest wall, causing a lung to collapse. As such, Defendant argues that an accidental puncture could create a potentially life-threatening injury, negating specific intent to kill.

The record, however, indicates the wound to the victim's chest was both significant and life-threatening. Dr. John Gray, the victim's treating physician in the emergency room, testified upon her arrival, the victim was going into shock from blood loss as a result of her chest wound. Dr. Gray stated the victim could have died if she had not sought treatment. The victim's initial blood pressure was 60/40 mm Hg. When efforts to resuscitate the victim with intravenous fluids failed, the victim was given two units of blood. The victim's initial chest x-ray indicated her left chest cavity was full of blood, causing the lung to collapse. Dr. Gray explained that the knife stabbing cut a blood vessel which bled into the chest cavity. The knife stab also penetrated the chest cavity resulting in a pressure change, which caused the lung to collapse.

Dr. Gray inserted a chest tube and about 500 cc of blood was initially drained from the chest cavity. A CAT scan, however, indicated that a significant amount of blood remained in the left chest cavity. Because the blood in the chest had clotted and could not be drained via the chest tube, Dr. Gray consulted a surgeon who surgically removed the clotted blood. The victim was then transferred to the intensive care unit where she remained for five days.

Although the size of the wound was relatively small at three-fourths of an inch wide, the stabbing, nonetheless, nearly killed the victim as the result of blood loss and loss of lung function. A photograph of the wound reflects that the wound is in the center of the chest, just left of the sternum. The stab wound was deep enough to puncture the chest cavity and cut a blood vessel, resulting in a serious and life-threatening injury. Further, Dr. Gray testified it was very difficult to say exactly how far the weapon went into the victim's body.

Considering the record at hand, we find Defendant's contention that the victim's chest wound was not "horrific" is entirely a misstatement. The victim clearly sustained a serious and life-threatening injury as a result of the stabbing. To suggest that a mere opening was created in the chest wall, causing a lung to collapse, would require the factfinder to ignore the physical complications suffered by the victim as a result of the stabbing. Further, Defendant did not present any evidence or testimony to indicate that the stabbing was an "accidental puncture" which simply created a potentially life-threatening injury, thereby negating the specific intent to kill.

Lastly, Defendant asserts his actions after cutting the victim were not the actions of a person acting with the specific intent to kill. Defendant contends he stopped all aggressive action and attempted to bandage the victim's wounds. He did not "bother" her when she went to bed after being bandaged. Although he initially

refused to take the victim to the hospital, he allowed a neighbor to take her to the hospital.

Contrary to the Defendant's assertions, the record indicates after Defendant stabbed the victim, he was briefly remorseful, but was too worried about his own freedom from prosecution to seek medical care for the victim. After a three-day spree of beating the victim and ultimately stabbing her, Defendant taped a wash rag to her chest wound with duct tape. Defendant did not seek medical assistance or even procure an appropriate bandage or dressing for her wounds. Defendant offered to sew up the victim's wound himself, but understandably, the victim would not allow him to do it. The victim then laid down because she was not feeling well. She was having trouble breathing. Again, instead of seeking medical help for the victim in respiratory distress, Defendant left the victim alone the remainder of the night while her condition continued to deteriorate.

The following day, while Defendant was away, the victim, battered and weak, walked to the neighbor's house next door. The victim first asked her neighbor, James, for food. James testified the victim was very pale so he asked what was wrong. The victim reported that she had been in an altercation with Defendant. When James saw the wound beneath the duct tape, he stated that he was "tripped out" because the wound looked "nasty." James asked the victim if she wanted to go to the hospital, but the victim declined. According to James, the victim was scared of disobeying Defendant by going to the hospital. James gave the victim peroxide and alcohol for her to take a bath and clean the wound. James stated that the victim did not look like she had bathed in a few days. After the victim had eaten, she returned to her house.

When Defendant returned, he went to James' home. When James inquired

about taking the victim to the hospital, Defendant became angry. James then told Defendant the victim might die if she did not seek treatment. Defendant, according to James, did not want the victim to go to the hospital because he was afraid he would be arrested. James assured Defendant that he would not be implicated. As long as his name was not mentioned, Defendant agreed to let James take the victim to the hospital. James told Defendant he would tell the hospital that he did not know the victim.

Alma Lewis, James' wife, confirmed that the victim was bad off when she arrived at their home and that her chest wound was covered with duct tape. According to Alma, the victim's face was all "purplish." Alma testified that the victim did not want to go to the hospital because she was scared Defendant would do something else to her.

Considering the evidence and testimony at trial, we find Defendant's actions after cutting the victim were not those of person concerned about the well-being of the victim. Not only was the victim in critical condition by the time she reached the hospital, the record reflects Defendant had no intention of jeopardizing his freedom by seeking medical attention. But for the insistence of his neighbor and his assurance that Defendant would not be implicated, the victim may not have been treated and could have died as a result of the injuries inflicted. Defendant's claim that his actions were not the actions of a person acting with the specific intent to kill rings hollow, considering the testimony and evidence before this court. This assignment of error lacks merit.

### Pro Se Assignments of Error

Defendant filed a *pro se* brief with this court, setting forth ten assignments of error, which we will address.

**Assignment of Error No. 1**

In his first assignment of error, Defendant argues the trial court erroneously charged the jury in its initial charge of law when it included the element of specific intent to kill or inflict great bodily harm. Defendant concedes that an objection to the jury charge was not made. As such, pursuant to La.Code Crim.P. art. 801, the issue was not preserved for review on appeal. *State v. Campbell*, 06-286 (La. 5/21/08), 983 So.2d 810, *cert. denied*, ___ U.S. ___, 129 S.Ct. 607 (2008). Accordingly, this assignment of error cannot be considered.

**Assignment of Error No. 2**

Defendant contends he was denied his constitutional right to confront his accusers when Dr. John Gray was allowed to testify as an expert witness. Defendant asserts that Dr. Gray testified about the care rendered by other healthcare providers as reflected in the medical records, without first hand knowledge of such facts. Defendant contends Dr. Gray's testimony did not consist of an expert opinion regarding such treatment or conditions, but was rank hearsay. As such, Defendant argues he was denied the right to confront his accusers.

Defendant concedes his counsel failed to object to Dr. Gray's testimony regarding care performed by other healthcare professionals during the victim's hospitalization. Pursuant to La.Code Crim.P. art. 841(A), Defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error. *See also State v. Willis*, 05-218, (La.App. 3 Cir. 11/2/05), 915 So.2d 365, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006). Accordingly, Defendant may not now complain about this testimony.

**Assignment of Error No. 3**

In this assignment of error, Defendant argues that repeated acts of prosecutorial misconduct occurred during trial with the use of false evidence or the manipulation of material evidence. First, Defendant refers to the State's opening statement wherein the State asserted that Defendant prevented the victim from leaving the house by destroying all of her clothes. The specific portion of the State's opening statement reads:

> You will also learn that Friday morning when she woke up she was not able to leave the house, and the reason was this man wouldn't let her. But there were more reasons than that; she had no clothes left, except for the ones that were on her body.
>
> And the reason she had no clothes left is during the night Thursday he slashed her clothes so she wouldn't have anything to wear to get away.
>
> You will learn that Friday morning he acted as though nothing happened, although, she could not leave the house. He kept her there naked so that she couldn't leave the house. Even though she would have gladly left naked, he wouldn't let her.

On appeal, the Defendant contends that the victim had clothes on her body that were not cut up, and that his intent in cutting up her clothing was to punish her, not to prevent her from leaving. In support of his argument, Defendant refers to the victim's testimony wherein she was questioned about her clothing that was destroyed by Defendant.

After identifying the various items of clothing that were cut up by the Defendant with the same knife used to stab her, the victim testified as follows:

Q    Did you see him cut these clothes?

A    Yes, ma'am.

Q    Did he say anything to you while he was cutting those clothes up?

A    He was gonna make sure I didn't have nothing to wear. He said, I'm gonna cut up all your clothes. I have to punish you.

Although, Defendant is correct that the victim's testimony did not support the State's claim in its opening statement, Defendant did not object to the State's allegation. Again, the Defendant cannot avail himself of this alleged error without having made a contemporaneous objection at the time of the error. La.Code Crim.P. art. 841(A).

**Assignment of Error No. 4**

Defendant asserts the trial procedure employed in Louisiana is unconstitutional. Defendant explains that the State is permitted to have a rebuttal of a defendant's case in both the evidentiary phase and in closing arguments, constituting what the Defendant calls an *ex parte* trial process. The Defendant concedes that the State did not produce rebuttal testimony, but points out that the State did rebut his closing argument. Defendant concludes that this alleged error "is a structural defect in the trial mechanism, and thus, is not subject to a harmless error analysis."

First, we note Defendant's argument is factually incorrect. The trial procedure described by the Defendant does not constitute an *ex parte* trial process. With regard to the normal order of trial, La.Code Crim.P. art. 765 provides for "[T]he presentation of the evidence of the state, and of the defendant, and of the state in rebuttal," as well as "[T]he argument of the state, the defendant, and the state in rebuttal." In *State v. Williams*, 358 So.2d 943 (La.1978), the supreme court found no merit in the defendant's claim that the statutory order of argument was unconstitutional because he was not allowed to rebut the State's rebuttal. In its reasons for ruling, the court stated:

> Louisiana Code of Criminal Procedure Article 765 provides that the state shall have the last argument to the jury. Addressing this same issue in *State v. Wiggins*, 337 So.2d 1172, 1173 (La.1976), this Court stated:

"The defendant had no right, as here claimed, to make surrebuttal argument to the state's closing rebuttal argument. La.C.Cr.P. art. 765(6). The defendant cites no legal authority in support of his contention that the statutory order of argument (state, defense, state rebuttal) provided by this article is unconstitutional.

"This is, in fact, the prevailing statutory order of argument in American jurisdictions. 5 Wharton's Criminal Law & Procedure, Section 235 (Anderson ed., 1957). The Uniform Rules of Criminal Procedure, 521(7) (1974) (Natl. Conf. Comm'rs. Uniform State Laws), recommend that rebuttal and surrebuttal be authorized within the discretion of the court, but there is no intimation that the prevailing procedure offends any constitutional guarantee to a fair trial."

*Id*. at 947.

In addition to the incorrect assertions made by Defendant the instant case, he presents no legal authority in support of his contention that the trial procedure employed in Louisiana as provided by La.Code Crim.P. art. 765 is unconstitutional. Further, Defendant does not show how he was prejudiced by the such trial procedure. Accordingly, we find no merit in Defendant's argument.

**Assignment of Error No. 5**

By this assignment of error, Defendant argues that defense counsel provided ineffective assistance at trial. The Defendant details fourteen alleged errors on behalf of defense counsel as follows:

1) Failure to object to the erroneous jury charge by the court, in its initial charge, that intent to commit great bodily harm was an element of attempted second degree murder;

2) Failure to investigate potential defense witnesses defendant had advised him of;

3) Failure to procure dental records of victim from Washington State, that showed victim's teeth were loose from her serious diabetic condition and Medical personnel there had determined all her teeth should be pulled [disproving victim's contention Appellant had hit her, knocking her teeth loose];

-10-

4) Failure of counsel to procure and use the recorded statements made by victim to police, to impeach her testimony at trial, wherein victim clearly told police in the third statement, when specifically asked why she had not told police in her prior statements about being raped, that she had forgot about it [discrediting her trial testimony that she had told police the first night about being raped and discrediting the police who testified at trial that she had told him she was raped, tho [sic] he did not report that to anyone else;

5) Failure to subpoena the nurse the police officer testified he had present while interviewing victim, when she advised him she had been raped the first time, to discredit that officer's trial testimony;

6) Failure of counsel to object to the hearsay testimony offered by Dr. Gray, whom was allowed to testify to everything medically done to victim at hospital, without any first hand knowledge of these facts;

7) Failure of counsel to disprove, by use of medical records that were provided in discovery, Dr. Gray's erroneous trial testimony that the chest stabb [sic] wound was over an inch deep, when records proved the wound was .4 centimeters deep;

8) Failure to subpeona [sic] expert on diabetes to proven blood clotting affected, showing why blood loss was as great as it was;

9) Refusal of defense counsel to permit Appellant to exercise his constitutional right to testify in his own behalf at trial;

10) Failure of defense counsel, whom Appellant gave notice to, to secure the tapes of the telephone wire taps for December 29, 2004, to Willie James Lewis' phone, which proved that Doran never made an allegation of anal rape, until Lewis told her that date [immediately prior to her going to make a video tape statement to police and accusing Appellant of anal rape] that Appellant Jones had told him she [Doran] was having group anal sex with three men, was the reason for the altercation [proving Doran a liar at trial when she claimed she was not unfaithful to Jones];

11) Failure of defense counsel to subpeona [sic] Jason Fruge and his two male friends who lived in Sulfer [sic], Louisiana [Appellant advised counsel of these witnesses] whom were the three men whom had anal sex with Doran on or about December 7, 2004, proving Doran a liar at trial when she testified she was not unfaithful to Jones;

12) Failure of defense counsel to secure the medical records of Doran from Washington State proving She had a miss with an illicit drug

IV, that required treatment, impeaching Doran's trial testimony that she did not use drugs;

13) Failure to secure Appellant's medical records proving he had a ruptured disc in his back and was so disabled that he was scheduled for another back operation at the time of incident;

14) Failure to secure for trial the clothing Appellant allegedly cut up that were Doran's, which would show price tags still attached, as only recently purchased by Appellant, proving Appellant's motive in cutting up these cloths [sic].

As noted by this court in *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701:

A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

In the present case, each of the fourteen allegations involve matters of trial preparation or strategy. This court in *State v. Smith*, 07-468, pp. 8-9 (La.App. 3 Cir. 10/31/07), 969 So.2d 694, 700, *writ denied*, 07-2484 (La. 5/16/08), 980 So.2d 707, favorably cited *State v. Smith*, 06-820 (La.App. 1 Cir. 12/28/06), 952 So.2d 1, 12, *writ denied*, 07-211 (La. 9/28/07), 964 So.2d 352, wherein the court stated:

It is well settled that decisions relating to investigation, preparation, and strategy require an evidentiary hearing and cannot possibly be reviewed on appeal. Only in an evidentiary hearing in the district court, where the defendant could present evidence beyond that contained in the instant record, could these allegations be sufficiently investigated. Accordingly, these allegations are not subject to appellate review. (citations and footnote omitted).

*See also State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804.

Because the Defendant's allegations of ineffective assistance of counsel involve matters of trial strategy, the record before the court is insufficient to make

definitive findings as to Defendant's claims. Accordingly, Defendant's allegations are not subject to appellate review, but should be relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised.

**Assignment of Error No. 6**

Defendant argues that defense counsel provided ineffective assistance on appeal. Defendant asserts there were non-frivolous issues which should have been raised by appellate counsel. Defendant also complains that appellate counsel raised a single error with regard to only one of his convictions, attempted second degree murder, and the argument with regard to that error was not "properly marshalled [sic]."

We note although Defendant sets forth ten *pro se* assignments of error, he fails to raise any errors specific to his convictions for forcible rape or false imprisonment with a deadly weapon. When given the opportunity to address specific contentions regarding these convictions, Defendant does not identify any errors on appeal or how he has been harmed by such errors.

Without any proof of an error on behalf of appellate counsel, we find no merit in this assignment of error.

**Assignment of Error No. 7**

Defendant alleges he was deprived a full, fair and effective appellate review due to unconstitutional appellate procedure. Defendant asserts that once he discovered he was being provided with ineffective assistance of counsel on appeal, he petitioned this court to allow him to file a *pro se* brief. However, according to Defendant, this court impeded his attempt to "effectively marshal any errors he discovered" by sending an explicit order with the appeal record that no one was to see

the record accept Defendant himself. Also, Defendant states that when he recognized the trial transcript was not present, he attempted to have the warden verify the fact. When the warden contacted this court, asking if he or the attorney for the Department of Corrections could review the record, he was told no. Defendant contends that every attempt to secure some form of aid for a proper and effective appellate brief has been impeded by this court.

Other than the above allegations, Defendant does not refer to any evidence in the record which indicates that this court hindered his appellate review. We note that one of Defendant's convictions involves forcible rape. Accordingly, when the record was sent to Defendant to prepare his *pro se* brief, he was advised in correspondence dated January 21, 2010, and March 18, 2010, that the instant case is "a 'Victim's Right Case' and should be maintained in a confidential manner in accordance with La.R.S. 46:1844(W)." Louisiana Revised Statues 46:1844(W) reads, in pertinent part:

> (1)(a) In order to protect the identity and provide for the safety and welfare of crime victims who are minors under the age of eighteen years and of victims of sex offenses, all public officials and officers and public agencies, including but not limited to all law enforcement agencies, sheriffs, district attorneys, judicial officers, clerks of court, the Crime Victims Reparations Board, and the Department of Social Services or any division thereof, shall not publicly disclose the name, address, or identity of crime victims who at the time of the commission of the offense are minors under eighteen years of age or of victims of sex offenses. The confidentiality of the identity of the victim of a sex offense may be waived by the victim ...

Additionally, the crime of forcible rape is defined as a sex offense for the purpose of this section. La.R.S. 46:1844(W)(2).

Other than this court's correspondence sent to the Defendant in compliance with La.R.S. 46:1844(W), there is simply no evidence that Defendant had restricted or limited access to the record herein. Accordingly, there is no merit to Defendant's

claim.

**Assignment of Error No. 8**

Defendant argues he was denied his fifth amendment right to testify on his own behalf. Defendant asserts he told defense counsel immediately prior to resting his case that he wanted to testify on his own behalf so he could explain what had transpired between himself and the victim.

According to Defendant, the record does not contain several matters, including repeated incidents where the trial court warned him about his forceful arguments with defense counsel. Specifically, Defendant describes a time when he demanded he be allowed to testify on his own behalf. Defendant states the trial court threatened to remove him from the courtroom if he did not sit down and be quiet.

As stated by Defendant, there is no indication of the alleged incident in the record. Without any proof that Defendant was prevented from testifying in his own behalf, this assignment of error lacks merit.

**Assignment of Error No. 9**

Defendant argues in this assignment of error that he was denied his right to the compulsory process of witnesses. Defendant maintains he advised defense counsel of numerous witnesses he desired to subpoena for trial that would have greatly aided in his defense, as well as various dental and medical records of the victim. Defendant concludes that defense counsel's failure to afford him his compulsory right to present a defense constituted a constructive denial of his compulsory process of witnesses/evidence for a defense.

Although couched in different terms, this assignment of error is a claim of ineffective assistance of counsel which was raised by the Defendant in assignment of error number five. Further, these alleged errors are included within assignment of

error number five.

Again, Defendant's allegations of ineffective assistance of counsel involve matters of trial preparation and strategy and are not subject to appellate review. Defendant's allegations should be relegated to post-conviction relief proceedings where, if warranted, a full evidentiary hearing may be conducted to develop a sufficient record on the issues raised. *Tapp*, 8 So.3d 804.

**Assignment of Error No. 10**

In his final *pro se* assignment of error, Defendant argues the evidence was not sufficient to support a conviction of attempted second degree murder. Defendant focuses solely on the element of intent, asserting that the size of the chest wound did not support the specific intent needed for a conviction. Defendant maintains that according to the State's medical records, the victim's chest wound was .4 centimeters deep, less than one-fifth of an inch. As such, Defendant argues the wound was insignificant and did not demonstrate that he possessed the intent to commit the crime.

We note that Defendant does not provide a suitable reference to the record which contains the basis for the alleged error, that the wound was only .4 cm deep, as required by Uniform Rules—Courts of Appeal, Rule 2-12.4. Accordingly, this argument cannot be considered. We also note that a thorough discussion regarding the size and nature of the wound is found in our discussion previously of defense counsel's allegation of insufficient evidence.

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find one error patent and that correction of the court minutes is needed.

Louisiana Code of Criminal Procedure Article 930.8 provides:

> A. No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922, . . .
>
> . . . .
>
> C. At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing. If a written waiver of rights form is used during the acceptance of a guilty plea, the notice required by this Paragraph may be included in the written waiver of rights.

Although the record reflects following sentencing Defendant sought post-conviction relief to seek an out-of-time appeal, the record does not indicate the trial court informed Defendant, verbally or in writing, of the prescriptive period for filing post-conviction relief. Consequently, we direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to him within ten days of the rendition of this opinion, and to file written proof that Defendant received the notice in the record of the proceedings. *State v. Roe*, 05-116 (La.App. 3 Cir. 6/1/05), 903 So.2d 1265, *writ denied*, 05-1762 (La. 2/10/06), 924 So.2d 163.

We also find a correction of the minutes of sentencing is needed regarding the imposition of concurrent and/or consecutive sentences. The court minutes provide in pertinent part:

> [A]s to the charge of False Imprisonment, the Court sentences the defendant to serve five (5) years in the Louisiana Department of Corrections, and as to the charge of Forcible Rape, the Court sentences the defendant to serve fifteen (15) years in the Louisiana Department of Corrections; with five years being without the benefit of probation, parole, or suspension of sentence, to run consecutively with the Attempted Second Degree Murder and False Imprisonment charges and concurrently to the Forcible Rape charges[sic].

However, the sentencing transcript provides, in pertinent part:

-17-

In addition thereto on the charges [sic] of false imprisonment, the Court is going to sentence you to five years Department of Corrections.

On the forcible rape charges [sic] the Court is going to sentence you to 15 years Department of Corrections, five of which shall be without probation, parole or suspension of sentence.

I'll make that consecutive to the Second Degree Murder charges [sic].

. . . .

I mean, attempted Second Degree Murder charges [sic]. And I will run the false imprisonment concurrent with the forcible rape charges [sic].

Consequently, the trial court should be instructed to amend the minutes of sentencing to accurately reflect the sentencing transcript.

### *Decree*

For the foregoing reasons, Defendant's conviction is affirmed. The trial court is directed to inform Defendant of the  provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof that Defendant received the notice in the record of the proceedings. Additionally, the trial court is instructed to correct the minutes of sentencing to accurately reflect the sentencing transcript.

**_____AFFIRMED WITH INSTRUCTIONS.**