486 So.2d 876 (1986)
STATE of Louisiana
v.
Michael BROWN.
No. KA 85 1240.
Court of Appeal of Louisiana, First Circuit.
March 25, 1986.
Writ Denied June 13, 1986.
Bryan Bush, Dist. Atty., Baton Rouge, by Doug Simmons, Asst. Dist. Atty., for plaintiff-appellee.
Brady Jones, Appellate Public Defender, Baton Rouge, for defendant-appellant.
Before LOTTINGER, COLE and CRAIN, JJ.
COLE, Judge.
Defendant, Michael O'Keith Brown, was charged by bill of information with illegal possession of stolen things valued at five hundred dollars or more, in violation of La.R.S. 14:69. Defendant filed a motion to suppress physical evidence, which was partially denied. He also filed a motion to suppress his oral tape recorded statement, which was also denied. He then pled guilty to illegal possession of stolen things valued at one hundred dollars or more but less than five hundred dollars, reserving his right to appeal from the adverse rulings on his motions to suppress. See State v. Crosby, 338 So.2d 584 (La.1976). Defendant was subsequently sentenced to two years imprisonment at hard labor.
*877 Defendant now appeals, alleging two assignments of error relative to the partial denial of his motion to suppress physical evidence and the denial of the motion to suppress his statement. Defendant essentially argues: 1) his statement was obtained as a result of physical abuse administered to him by the police; and, 2) the state failed to meet its burden of proving the statement was free and voluntary. Defendant argues the oral statement and the physical evidence seized, a stereo which was obtained as a result of the statement, should have been suppressed by the trial court.
At the suppression hearing, the state presented the testimony of Baton Rouge City Police Detectives Richard Lee, III, and Steve B. Millican, Jr. Defendant testified on his own behalf.[1]
The testimony of Detectives Lee and Millican revealed they investigated a burglary on December 7, 1984, in which a Fisher stereo system, several weapons and a Tootsie Roll bank (containing an unknown amount of pennies) had been taken. During their investigation, the detectives learned through an informant of defendant's possible involvement in the burglary.[2] On or about December 17, 1984, Detectives Lee and Millican arrested defendant pursuant to two outstanding arrest warrants for contempt of court. The detectives then transported defendant to their office for processing and questioning.
Defendant's testimony was as follows. On the date of his arrest Detectives Lee and Millican took him to a small police substation and brought him into a small room where they questioned him concerning the December 7th burglary. When he failed to provide answers, Detective Lee grabbed defendant around the neck and threw him to the floor. Defendant further testified that, while he was still on the floor, Detective Millican "jigged" him in the ribcage on his left side, using the butt of a walking cane. Defendant then rose to his feet. The detectives asked him again whether he wanted to make a statement. Defendant did not reply. The detectives then left for about ten or fifteen minutes and returned with a tape recorder. They again asked defendant whether he wanted to make a statement. When defendant responded negatively, Lee punched defendant in the stomach, grabbed him behind the neck and threw him against the wall. Defendant got up, at which time Millican kicked defendant's feet out from under him, causing him to fall to the floor. The detectives then left the room a second time, telling defendant he had better have something to say when they returned. When the detectives returned, defendant made a taped statement. Defendant testified he made this statement because he was tired of being beaten.
After he made the taped statement defendant took Lee and Millican to the residence of Silas Rogers, a friend, where the stereo was recovered. Rogers did not raise any objection to the detectives taking the stereo.
The testimony of Detectives Lee and Millican discloses they took defendant, following his arrest, to an office which was an open area used by ten officers. However, they were the only officers present at the *878 time. Detective Lee denied defendant was taken into a separate room. Detective Lee testified he advised defendant of his constitutional rights prior to the commencement of questioning. He further testified defendant appeared to understand his rights and signed a consent to questioning form in his presence. Lee testified he made no promises or inducements to procure a statement from defendant and did not threaten, intimidate or beat defendant or use any physical force or duress to induce defendant's statement. Similarly, Detective Millican testified neither he nor anyone else used any force, violence, duress or intimidation against defendant. Lee specifically denied grabbing defendant around the neck, throwing him to the floor, and strangling or punching him. Lee also denied Millican hit defendant in the side with a walking cane. Detective Millican also denied having struck defendant at any time with a walking cane and further denied Lee had grabbed defendant around the neck and had thrown him to the floor.
In State v. James, 459 So.2d 28, 29-30 (La.App. 1st Cir.1984), this Court stated the following:
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively proving, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Simmons, 443 So.2d 512 (La. 1983); State v. Green, 443 So.2d 531 (La.1983); State v. West, 408 So.2d 1302 (La.1982). Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Green, supra; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Once a defendant alleges specific instances of police misconduct in reference to a statement, it is incumbent upon the State to specifically rebut each instance. State v. Dison, 396 So.2d 1254 (La.1981); State v. Franklin, 381 So.2d 826 (La.1980). The trial court's conclusion about the admissibility of a confession or statement, if supported by the evidence, will not be disturbed on appeal. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Nathan, 444 So.2d 231 (La.App. 1st Cir. 1983), writ denied 445 So.2d 1232 (La. 1984).
When credibility and weight of testimony relating to the voluntariness of a confession for the purposes of admissibility is at issue, the trial court's determination will not be reversed on appeal in the absence of a clear abuse of discretion. State v. Brumfield, 464 So.2d 1061 (La.App. 1st Cir.1985).
After careful review of the evidence presented, we find the trial court rulings denying defendant's motion to suppress his taped statement and partially denying his motion to suppress physical evidence are supported by the evidence. It is obvious the trial court accepted the detectives' testimony over that of the defendant. The version of events testified to by Detectives Lee and Millican shows defendant's taped statement was made freely and voluntarily and was not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. It further shows defendant was given his Miranda rights prior to giving a statement. Accordingly, both the taped statement and the physical evidence obtained as a result of the statement were properly ruled admissible into evidence.
These assignments are without merit.
AFFIRMED.
NOTES
[1] While other defense witnesses testified at the suppression hearing, viz, defendant's sisters, Lisa Brown and Kathryn Brown; his mother, Virgie Bailey; and his girlfriend, Ida Thomas; their testimony does not relate to the rulings which are the subject of this appeal. Instead their testimony relates to the suppression of a Tootsie Roll bank seized at defendant's residence on December 7, 1984, which was suppressed by the trial court through its partial granting of the motion to suppress physical evidence.
[2] The record shows Detectives Lee and Millican initially conducted a warrantless search of defendant's residence on December 7, 1984, pursuant to the oral consent of defendant's mother. Thereafter, defendant's sister, Kathryn Brown, arrived at the residence, questioned whether the detectives had a warrant and requested the search be halted. The search was continued and a Tootsie Roll bank was found and seized outside the residence. In suppressing the Tootsie Roll bank, the trial court determined the consent to search the premises had been withdrawn prior to the time the bank was found, rendering the bank inadmissible into evidence.