ALFORD, Judge.
Jackie L. Washington was charged by indictment with aggravated kidnapping, in violation of La.R.S. 14:44. After a jury trial, he was convicted; and the trial court sentenced him to a term of life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence. The defendant appeals, urging six assignments of error.[1]
FACTS
This incident occurred in the early morning hours of October 16, 1986. The victim, a female student at Louisiana State University had just left a friend’s apartment, where she had been studying, and was returning to Herget Hall, her campus dormitory. After parking her car in the dormitory’s extension parking lot, approximately a block and a half from Herget Hall, the victim got out and started walking toward the dormitory. The victim had only walked a few steps when she saw defendant coming toward her with a pistol in his hand. Defendant forced the victim to get into his car, told her to lay her head down, and then told her that she would not get hurt if she did what he said.
While holding the gun to the victim’s leg, defendant drove to a location in West Baton Rouge Parish where he raped her. Defendant then stole approximately forty dollars from her. After learning that the victim had no more money in her possession, defendant started to drive her back to campus. He stated he would drive her back to her dormitory, but since he did not have enough gas he would have to leave her at a location “a long way away” from her dormitory. Fearing for her personal safety if left at such a location, the victim convinced defendant to stop at a service station so she could use her father’s credit card for gas. They stopped at a service station; and the victim went up to the station attendant’s window to charge the gas, while defendant pumped the gas. However, before she got out of the car, defendant warned her that if she “tried anything funny” she knew what would happen to her because he still had the gun in his pocket. Defendant then released the victim at her dormitory.
Several days later, early in the morning of October 21,1986, defendant was stopped by LSU Police Officer Ricky Roubique in the parking lot of Miller Hall, a dormitory near Herget Hall. The victim was brought to the scene of the stop, and she identified defendant’s car as the car she was forced into the night of the kidnapping. Shortly after the stop, LSU Police Officer Aubrey McCullough arrived at the location of the stop. After McCullough advised defendant of his Miranda[2] rights, defendant made a statement to him. Shortly thereafter, defendant was taken to the LSU Police Department where he made a second statement to the police. This statement was made to LSU Police Detective Raleigh Warner and West Baton Rouge Parish Deputy Sheriff Oliver Lee, after defendant was again given his Miranda rights. At a physical lineup conducted on the following day, the victim positively identified defendant as the perpetrator of the instant offense; and, at trial, the victim made a positive in-court identification of defendant.
ASSIGNMENTS OF ERROR NOS. 1-3:
By means of these assignments, defendant contends that the trial court erred by failing to grant his motions to suppress[3] *505 the stop of his vehicle, the physical evidence seized from the vehicle and the statements he made to the police during custodial interrogations. Defendant argues that the police did not have reasonable cause to stop his vehicle. Hence, he concludes that the stop was unconstitutional. Defendant argues that the search of his vehicle, after the stop, was a search for evidence and not a valid inventory search. Finally, defendant claims that the state failed to prove that his statements to the police were knowingly and voluntarily made.
THE INVESTIGATORY STOP
The Fourth Amendment to the United States Constitution and Article I, § 5, of the Louisiana Constitution protects citizens against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure Article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Pautard, 485 So.2d 909 (La.1986). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference. 485 So.2d at 911.
Stopping an automobile and detaining its occupants constitutes a seizure within the meaning of the fourth amendment, although the purpose of the stop is limited and the resulting detention is quite brief. In justifying the particular intrusion, the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. State v. Flowers, 441 So.2d 707 (La.1983), cert. denied, 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984).
Knowledge that an offense has been committed is often a critical element in establishing reasonable cause. When the officer making the stop knows a crime has been committed, he has only to determine whether or not additional trustworthy information justifies a man of ordinary caution to suspect the detained person of the offense. State v. Bickham, 404 So.2d 929 (La.1981).
LSU Police Officer Ricky Roubique testified that at about 12:10 a.m. on October 21,1986, he came in contact with defendant’s vehicle; and he stopped it at 12:15 a.m. in the North Miller Extension Lot. He observed the vehicle for about forty-five seconds to a minute before stopping it.
Roubique testified that he was aware that two black males had been seen tampering with some vehicles in the parking lot shortly before midnight. Several other LSU Police Officers, including Officer Aubrey McCullough, were in the area investigating recent burglaries. Roubique and McCullough were communicating over their police radios, and McCullough told Roubique to try and obtain the license plate number of a “white over gold” Chevrolet that had just pulled into the parking lot. According to Roubique, he never received a message from McCullough over the radio to stop defendant’s vehicle. He stopped the vehicle based upon his own suspicions. Roubique testified that prior to the stop he had knowledge of the description of the vehicle used during the commission of the instant offense, i.e., a “white over gold” mid-1970’s Impala or Caprice with “heavy bondo” especially on the rear of the vehicle.
In articulating his reasons for stopping defendant’s vehicle, Roubique testified that when he initially spotted the vehicle he became suspicious, because based upon his experience in the area “the vehicle did not fit the students’ type vehicle, he was cruising very slowly, a black male, had no student decal on the vehicle, which indicates that he’s not a student there, and cruising very slowly looking at vehicles.” At this point, Roubique had made up his mind to stop defendant just to identify him due to *506 the suspicious activity in an area that had been beset by recent burglaries. However, when defendant turned at a corner, and Officer Roubique saw the vehicle more clearly, he recognized it as fitting the description given by the victim. Roubique. testified that in his mind he was investigating the instant offense and he wanted to identify the driver of the vehicle.
Roubique then stopped defendant. Rou-bique asked defendant for his driver’s license and asked him what he was doing in the parking lot. Defendant stated he was waiting for his sister, Janice Washington, who lived in Miller Hall Dormitory. Rou-bique requested, apparently over his police radio, a check on the names of the residents of the dormitory which failed to disclose that a Janice Washington was a resident. At about that time, McCullough arrived at the scene. McCullough examined defendant’s car closely and immediately advised defendant of his rights and that he was a suspect in the instant offense. Under these circumstances, the police clearly had reasonable cause to stop defendant. See State v. Turner, 500 So.2d 885 (La.App. 1st Cir.1986).
THE SEARCHES
Both the United States Supreme Court and the Louisiana Supreme Court have recognized a true inventory search to be an exception to the warrant requirement. South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976); and State v. Jewell, 338 So.2d 633 (La.1976). To fall within the inventory exception, however, the state must prove that the impoundment of defendant’s vehicle was necessary and that the inventory of the vehicle’s contents was necessary and reasonable in its scope. State v. Crosby, 403 So.2d 1217 (La.1981).
The justification for an inventory search of a vehicle is ostensibly to protect the occupant of a vehicle against loss of his property or to protect the law enforcement agency against the occupant’s claim for failure to guard against such loss. A valid inventory search is conducted not on probable cause to secure evidence, but merely to inventory the vehicle’s contents in order to safeguard them, as an incident to the vehicle’s necessarily being taken into lawful police custody. State v. Killcrease, 379 So.2d 737 (La.1980).
The record reflects that, after McCullough advised defendant of his rights at the scene of the stop, defendant responded to McCullough’s questioning in regard to defendant’s whereabouts during the preceding week. Defendant’s response included a statement by him that the only other person who drove his car was his mother. McCullough patted defendant down and placed him in his police unit. In the meantime, Roubique returned to the scene of the stop with the victim, who made a positive identification of defendant’s car. Thereupon, defendant was held as a suspect in the instant case. McCullough asked defendant’s permission to search defendant’s vehicle. Defendant refused to give his permission, and at that time no search was undertaken.
In accordance with the request of McCullough, LSU Police Officer Douglas Hill stayed with and stood watch over defendant’s car while the other officers transported defendant to the LSU Police Department. The West Baton Rouge Parish Sheriff’s Office, which was involved in the investigation of the rape and kidnapping, was contacted. They advised McCullough that West Baton Rouge Parish Sheriff's Detective Gordon Hebert was handling the case and that their agency would send for defendant and that defendant’s car would be impounded and towed to their impoundment lot.
Hebert testified that at about 1:15 a.m. he was notified that defendant was being detained at LSU and that a wrecker was being sent to East Baton Rouge to tow defendant’s car. Hill continued to watch over defendant’s car until McCullough returned to the scene of the stop at about 1:57 a.m., at which time they did an inventory search of the car. The testimony of McCullough and Hill reflects that, during the inventory, Hill entered the car and conducted the actual search of the car, while McCullough stood outside with an invento *507 ry sheet. As Hill called out the items he found, McCullough listed the items on the inventory sheet. None of the items were removed from the vehicle. McCullough testified that the purpose of the inventory was to maintain security over the items inside the car before releasing the car to the towing company and that the officers were not looking for evidence inside the car. After concluding the inventory, the officers released the vehicle to Big John’s Wrecker Company, the agent of the West Baton Kouge Parish Sheriff’s Office.
Hebert testified that at about 3:30 a.m. he inventoried defendant’s car at the sheriff’s impoundment lot. Using an inventory sheet, Hebert logged the license number of the car and listed on the inventory sheet the items inside both the passenger compartment and the trunk of the car. None of the items were removed from the car at that time. Hebert testified that the inventory was a routine inventory search of an automobile placed in their possession and for which they assumed responsibility.
We conclude that the impoundment of defendant’s vehicle was necessary. The vehicle had been positively identified by the victim as the one used during the commission of the instant offense. Accordingly, the vehicle was evidence of the crime; and its impoundment was required. Under the circumstances presented in this case, the inventories of the vehicle’s contents by both the LSU Police and the West Baton Rouge Sheriff’s Office were necessary and reasonable in their scope to safeguard the vehicle’s contents. Thus, the inventories constituted true and valid inventory searches.[4]
THE INCULPATORY STATEMENTS
Before a confession or inculpatory statement can be introduced into evidence, the state has the burden of affirmatively proving, beyond a reasonable doubt, that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451; State v. Brown, 486 So.2d 876 (La.App. 1st Cir.), writ denied, 489 So.2d 915 (La.1986). Additionally, the state must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. 486 So.2d at 878. The trial court’s conclusion about the admissibility of a confession or statement, if supported by the evidence, will not be disturbed on appeal. State v. Burkhalter, 428 So.2d 449 (La.1983); State v. Nathan, 444 So.2d 231 (La.App. 1st Cir.1983), writ denied, 445 So.2d 1232 (La.1984).
In regard to defendant’s inculpatory statement to Officer McCullough at the scene of the investigatory stop, the testimony of McCullough and Officer Roubique reveals that, prior to questioning defendant, McCullough advised defendant of his Miranda rights. McCullough testified that defendant understood those rights, that defendant did not appear to be intoxicated by alcohol or drugs, that he made no promises to defendant in return for the statement, that no one threatened or coerced defendant in any manner to make a statement and that defendant made the statement freely and voluntarily.
With respect to defendant’s other incul-patory statement made to Detective Riley Warner and West Baton Rouge Parish Deputy Sheriff Oliver Lee,[5] the testimony of both officers reveals that Warner advised defendant of his Miranda rights pri- or to any questioning. Warner testified that defendant appeared to understand his constitutional rights, that defendant was coherent and did not appear to be intoxicated by drugs or alcohol and that no one promised defendant anything, threatened defendant or coerced him to obtain a state *508 ment. Lee’s testimony corroborated Warner’s testimony that defendant was not induced by promises, threats or coercion to make a statement. Furthermore, Warner testified that the interrogation ceased when defendant indicated that he did not wish to continue answering questions.
We find that the evidence clearly established that both of defendant’s inculpatory statements were freely and voluntarily made after defendant was first advised of his Miranda rights. Hence, both statements were properly ruled admissible into evidence.
ASSIGNMENT OF ERROR NO. 4:
In this assignment, defendant contends that the trial court erred by admitting into evidence the gun and clothes allegedly worn by defendant at the time of the alleged offense. Defendant claims that the items were not sufficiently identified by the victim to be admissible.
The record reveals that S-l, the blue jumpsuit found in defendant’s car, and S-2, the gun found in the car, were introduced into evidence at trial.[6] Although defendant’s argument in brief does not disclose the specific ground(s) for objection upon which he bases his claim that S-l and S-2 were inadmissible, the record reveals that at trial defendant objected to the introduction of S-l and S-2 only on the basis of relevancy. A defendant is limited on appeal to grounds for objection articulated at trial. Any additional grounds cannot be raised for the first time on appeal. State v. Francis, 345 So.2d 1120 (La.1977), cert. denied, 434 U.S. 891, 98 S.Ct. 267, 54 L.Ed.2d 177 (1977). Hence, in this case, our review of defendant’s assignment is limited to the relevancy ground articulated to the trial court; and, notwithstanding the ambiguity of defendant’s argument on appeal, we will review this assignment in light of the relevancy ground.
Relevant evidence is evidence tending to show the commission of the offense and the intent, or tending to negate the commission of the offense and the intent. La.R.S. 15:441.[7] Any evidence, whether direct or circumstantial, is relevant if it tends to prove or disprove the existence of a material fact. State v. Williams, 486 So.2d 889 (La.App. 1st Cir.), writ denied, 489 So.2d 915 (La.1986). A trial court has wide discretion in determining the relevancy of evidence, and such a determination will not be overturned on appeal absent a clear abuse of discretion. State v. Huizar, 414 So.2d 741 (La.1982).
At trial, the victim viewed the blue jumpsuit (S-l). She testified that the zipper and color of S-l looked familiar, although she thought the clothing worn by defendant at the time of the offense had long sleeves rather than short sleeves. However, she further stated that S-l was similar to the clothing defendant wore at the time the instant offense was committed. Contrary to defendant’s assertion in brief, the victim testified at trial that the gun defendant had used during the commission of the offense was black with “possibly brown on it.” She denied that it was blue. When the victim viewed S-2, the gun found in defendant’s car, she testified that it was “very close to” the gun defendant had used. She stated that her identification of the gun was based on its size and color. On cross-examination, the victim testified that she was not sure S-2 was the exact gun used by defendant but that it “looks like it.” Additionally, Officer Gordon Hebert identified S-l as similar to a jumpsuit found in the trunk of defendant’s car; and he identified S-2 as the gun found beneath the driver’s seat of defendant’s car.
Clearly, both S-l and S-2 were relevant to the prosecution’s case. Hence, the trial court properly admitted the exhibits into evidence.
*509 ASSIGNMENT OF ERROR NO. 5:
By means of this assignment, defendant contends that the trial court erred by not allowing defense witness Morris Ellis Dunn to testify as to statements defendant made to Dunn within twenty-four hours after the alleged incident.
On direct examination, Dunn testified that he and defendant were best friends. Dunn stated that on October 16, 1986, he and defendant were playing cards at the home of Dunn’s sister in Baker, Louisiana, and that they played until 2:00-3:00 a.m. (the following day). Dunn indicated that he and defendant had had a conversation while they were playing cards. When defense counsel asked Dunn what if anything unusual defendant had revealed to him, the prosecutor objected on hearsay grounds; and the trial court sustained the objection. Thereupon, the jury was retired from the courtroom; and the following exchange occurred:
[The Court:] You have an objection to make or a motion.
[Defense Counsel:] A motion to make. The motion is the evidence I am attempting to elicit is not hearsay evidence. The evidence is, number one, a statement by a party. Two, it is an admission to the act which is alleged to have been a crime. He was playing cards with these people and he tells his best friend, you’re not going to believe what happened. I went out to LSU and this white girl bought me a tank of gas and we went across the river and had sex and that’s what you would tell your best friend and that’s a party admission, it’s a declaration against interest, if you can look at it, and it’s an exception to the hearsay rule.
[Prosecutor:] Your Honor, it’s a bla-tent hearsay statement. It’s offered for the truth of the matter and this white girl is not [the victim].
[The Court:] The statement is not part of the res gestae. It is not admission against interest. It is in my opinion, self-serving. It is just as if I were to steal four hundred dollars and run and tell my best friend I found four hundred dollars on the ground and I’m going to put that person on the stand to corroborate my story. I’m not going to allow that.
[Defense Counsel:] Why is that not relevant?
[The Court:] It is not relevant. It is hearsay. It is not an exception to the hearsay rule. It is not a part of the res gestae; it’s not admission against interest; it is in fact self-serving and I will not allow it for those reasons.
In brief, defendant states that his defense was that of consent; and it is apparent that defendant intended to use the alleged statement for its exculpatory value. Defendant was attempting to introduce evidence of an out-of-court statement to prove the truth of the matters asserted in the alleged statement. The evidence falls within the definition of hearsay. See State v. Glaze, 439 So.2d 605 (La.App. 1st Cir.1983).
Self-serving declarations by an accused, unless part of the res gestae, are not admissible in evidence. See State v. Melerine, 236 La. 930, 109 So.2d 471 (1959); State v. Vernon, 197 La. 867, 2 So.2d 629 (1941).[8] In the instant case, the trial court was clearly correct in determining that the witness’ testimony as to defendant’s alleged statement was completely self-serving in nature as it characterized the instant offense as nothing more than an encounter involving consenting parties. See State v. Day, 468 So.2d 1336 (La.App. 1st Cir.1985).
Defendant argues that the statement was admissible under the res gestae exception to the hearsay rule. See La.R.S. 15:447, 448.[9] However, our jurisprudence has distinguished between admissible res gestae statements (excited utterances) and non-spontaneous narration after the event, *510 with the latter constituting inadmissible hearsay. State v. Williams, 331 So.2d 467 (La.1976). La.R.S. 15:447 specifically provides that res gestae includes spontaneous words or acts of the participants at the time of the occurrence, but “not the words of the participants when narrating the events.” 468 So.2d at 1339. In this case, we concur with the trial court that the statement defendant allegedly made to Dunn was not part of the res gestae. The alleged statement was a non-spontaneous account of the incident by a participant after the event and is accordingly inadmissible hearsay.
ASSIGNMENT OF ERROR NO. 6:
By means of this assignment, defendant contends that the jury’s verdict is contrary to the law and the evidence.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal. La.Code Crim.P. art. 821. The record does not indicate defendant made such a motion, but it does contain an assignment of error which alleges that evidence was not sufficient. Therefore, this Court will review the sufficiency of the evidence, although this issue was not properly raised. In doing so, we will consider the evidence as though a motion for post-verdict judgment of acquittal had been filed under La.Code Crim.P. art. 821.
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Tate, 506 So.2d 546 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). This standard is codified in La.Code Crim.P. art. 821.
La.R.S. 14:44 provides, in pertinent part, as follows:
Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender’s actual or apparent control:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
Initially, we note that the testimony of the victim alone, is sufficient to prove the elements of an offense. State v. Orgeron, 512 So.2d 467 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La.1988). In finding defendant guilty of the instant offense, it is obvious the jury believed the victim’s testimony rather than defendant’s testimony that the victim consented to the encounter. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Walder, 504 So.2d 991 (La.App. 1st Cir.), writ denied, 506 So.2d 1223 (La.1987). The credibility of the victim’s testimony is a matter of weight of the evidence. A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Tate, 506 So.2d at 551. Herein, the victim’s testimony established that, after she exited her car in the dormitory parking lot, defendant forcibly seized, threatened, and transported her at gunpoint to another parish where he forced her to have sexual intercourse with him and give him money. It has been held that sexual gratification constitutes something of value for purposes of La.R.S. 14:44. State v. Washington, 482 So.2d 118 (La.App. 4th Cir.1986). Although there is no direct evidence of defendant’s specific intent to force the victim to submit to his sexual demands, or to give him the money, in order to secure her release, a rational fact-finder could reasonably infer that defendant intended to release her only after she complied. Specific intent, though a question of fact, may be inferred from the circumstances of the transaction. La.R.S. *511 15:445. See State v. Washington, 482 So.2d at 120-121. The evidence clearly is sufficient to establish the essential elements of aggravated kidnapping.
For the foregoing reasons, we affirm the aggravated kidnapping conviction.
AFFIRMED.

.In a seventh assignment of error, defendant requests this Court to review the record for errors patent. However, as noted in State v. Buttner, 411 So.2d 35 (La.1982), even if defendant did not assert the existence of an error patent and discoverable upon the mere inspection of the pleadings and minutes, such error would be noted ex proprio motu.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. In determining whether the ruling on defendant’s motion to suppress was correct, we are not limited to the evidence adduced at the hearings on the motion. We may consider all pertinent evidence given at the trial of the case. State v. Brown, 481 So.2d 679, 683 n. 1 (La.App. *505 1st Cir.1985), writ denied, 486 So.2d 747 (La. 1986).

. During the inventory searches, (S — 2) a toy gun was found inside defendant’s car on the floorboard under the driver’s seat and (S — 1) a blue jumpsuit was found in the trunk.

. The content of this statement was substantially similar to the earlier initial statement defendant made to Officer McCullough. Both statements related to defendant’s whereabouts during the previous week, and in both statements defendant indicated he and his mother were the only persons who drove his car. However, in defendant’s second statement, defendant also disclosed that he was on the LSU campus "looking for girls.”

. The state also offered into evidence another item of clothing allegedly worn by defendant during the commission of the instant offense, i.e., (S-5) a pair of shorts seized from defendant’s residence during a search of the residence. However, the trial court ruled that S-5 was inadmissible.

. Although Act 515 of 1988, enacting the Louisiana Code of Evidence, repealed La.R.S. 15:441 effective January 1, 1989, La.R.S. 15:441 is the law applicable to defendant’s trial held on December 2-4, 1987.

. By contrast, hearsay testimony relating to a confession or an admission is admissible under a widely recognized exception to the hearsay rule. La.R.S. 15:449, et seq. See, e.g., State v. Walker, 344 So.2d 990 (La.1977).

. The provisions of La.R.S. 15:447 and 448, although applicable and in effect at the time of defendant’s trial, were repealed by Act 515 of 1988 effective January 1, 1989.