JjJudge STEVEN R. PLOTKIN.
This is an appeal of a conviction of second-degree murder whereby the defendant was sentenced to life in prison without the possibility of parole or suspension of sentence. Defendant argues several assignments of error. For the reasons set out below, we affirm the conviction and the sentence.

PROCEDURAL HISTORY

On August 24, 2000, defendant, Henry Weber, was charged by an Orleans Parish grand jury with the second-degree murder of Jim Walker. Weber pled not guilty at arraignment. Weber filed discovery motions. On September 15, 2000, a hearing was held on the motion to suppress identification and motion to suppress statements. The trial court denied the motions.
Prior to commencing trial the state filed two motions in limine, one to preclude unsubstantiated allegations of evidence tampering, and one to preclude questions pertaining to witnesses’ acts or vices for which they have not been convicted. The trial court granted the motions. Trial was held on November 15, 2000. The jury found the defendant guilty as charged.
laOn November 29, 2000, the defendant filed a motion for new trial, which the court denied. The court sentenced defendant to life in prison without benefit of probation or parole.
On November 14, 2001, defendant filed a supplemental motion for new trial based on newly discovered evidence. On March 22, 2002, the trial court heard testimony and then denied the motion.

STATEMENT OF FACTS

Roy Brumfield, who was twenty-six at the time of trial, testified that he and Jim Walker had been friends for most of their lives and that Walker was like a family member. Shortly before the murder, Brumfield, the victim and two other individuals entered an abandoned building in the Florida Housing Project to consume heroin. The victim snorted heroin while Brumfield and the others took it intravenously. Brumfield related that after the victim had finished snorting the heroin he stepped outside and that he followed him. When Brumfield exited, the victim was sitting on his bicycle. Brumfield heard shots ring out and witnessed Walker fall to the ground. He stated that Walker struggled to push the bicycle from him but was unable to do so. Brumfield observed two subjects in the courtyard and identified the defendant as the shooter. Brumfield was standing by some bushes as he watched Henry Weber continuing to fire a gun as he drew closer to the victim until he stood over him. At the time, Brumfield believed that as many as ten shots may have been fired. He also testified that he was not sure how many shots were fired.
When the shooting stopped Brumfield ran. He returned to the scene as the police were arriving and observed the motionless body of Jim Walker and grabbed him. The officers pushed him away. Brumfield was taken to |sthe police station and questioned but he did not identify Henry Weber as the perpetrator. Brum-field was asked to identify the defendant, who was at the station, and although he *545 acknowledged that he knew him he did not identify him as the perpetrator. Brum-field explained that identifying Weber was not an option for him at that time. His testimony was essentially that where he lived people take care of things themselves, whether one describes it as an eye for an eye or payback, and that he planned to do so.
An officer was asked to drive Brumfield home, but Brumfield requested to be taken to Charity Hospital where he admitted himself for substance abuse treatment. While at Charity, Brumfield met with Jane Walker and told her what he had seen when her brother was murdered. After he was discharged, Brumfield called the Fifth District station and subsequently met with Detective Polito. He gave a taped statement and identified Henry Weber as the perpetrator. He also identified Weber from a photographic lineup.
Officer Leflore James Young Sr. and his partner Officer Benja Johnson were dispatched to the scene of the shooting at the intersection of Gallier and Florida. When they arrived, two other officers were already there. Young observed the victim lying on the ground with apparent gunshot wounds. He also observed a bike, a shirt, a hat and some blood on the sidewalk. Young notified EMS and secured the crime scene. Young began looking for evidence that would be left from a gun and marked the location of six .45 caliber shell casings which were discovered in the courtyard.
In the course of his investigation, Officer Young spoke with three witnesses who identified a suspect named Henry who lived on Dorgenois Street. The officer was able to determine that Henry Weber was the individual to whom the witnesses were likely referring.
pSubsequently, Officer Young and his partner relocated to the crime scene to see if they might have overlooked any evidence as there was a question as to how many times the victim had been shot. As the officers approached, they observed a subject bent over in the bushes at the location of the shooting looking for something. As they neared, the subject looked directly at the car and then ran. Officer Johnson recognized him as the suspect Henry. The officers observed the defendant enter the abandoned building at the location. Officer Johnson went around to the front while Officer Young entered the rear. Young heard a noise coming from upstairs and went to investigate. On the third floor he observed the same subject who they were pursuing standing with something in his hand. He ordered the defendant to drop the object. After handcuffing and patting the defendant down for weapons, Officer Young retrieved the object and found it be a sock containing a box of .45 caliber bullets. Officer Young advised the defendant of his rights and informed him that he was being held in connection with the recent murder. A crime scene technician was summoned to retrieve the evidence and the defendant was transported to the police station.
Jane Walker, the victim’s sister, testified that she received a call on the night of the shooting informing her that her brother had just been shot. She ran to the scene and saw her brother lying motionless on the ground. While on the scene, she spoke with a police officer and she also saw Brumfield in a police car. He motioned ■for her to speak with him but the car drove off before they could talk. Two or three days later, Walker met with Brum-field at Charity hospital. Subsequently, she met with Detective Polito at the Fifth District station and identified Henry Weber from a photographic lineup.
1 ^Detective Frank Polito, a member of the Fifth District homicide Division, testi *546 fied that when he arrived at the scene of the shooting the victim had already been removed by EMS. Detective Polito spoke with Roy Brumfield and although the detective did not develop any initial suspects after speaking with him, he had him transported to the Fifth District station because he was convinced that Brumfield knew more about the shooting than he was saying. The detective identified a number of photographs and diagrams of the crime scene depicting the area and the evidence that was recovered.
Once at the station Brumfield related that he had been in an abandoned building doing drugs with two other individuals, and he had walked down stairs and was at the doorway when he witnessed the shooting. Detective Polito testified that Brum-field was reluctant to provide any information as to the identity of the shooter.
Polito related that after the defendant was brought in, he brought Brumfield to make an identification. Brumfield knew that it was Henry Weber but did not say that he was the one who shot Jim Walker. Polito related that Brumfield was shaking when he looked at Weber through the two-way mirror. Four or five days after the occurrence, Detective Polito was contacted by Jane Walker. He took a taped statement from her and then had her view a photographic lineup of Henry Weber. Subsequently, Roy Brumfield contacted the Detective Polito. Polito took a taped statement from Brumfield and showed him a photographic lineup. Brumfield identified Henry Weber. Subsequently, Polito obtained an arrest warrant for the defendant. Detective Polito also obtained a search warrant for Weber’s residence. Weber was arrested at his home, and a search of the location did not result in any evidence being recovered.
| Kenneth Leary testified as an expert in ballistics and firearms identification. He tested the six bullet casings recovered at the scene and determined that they were from .45-caliber ammunition and that they were all fired from the same weapon. Leary also tested a pellet submitted into evidence in the case and determined that it was from .45 caliber ammunition.
Officer Karl Palmer, a crime scene technician, testified that he processed the crime scene. He photographed the specific evidence and the overall scene, and he completed a diagram of the scene identifying the location of all the evidence that was collected. Officer Palmer also processed the scene in the abandoned building where the box of bullets was recovered.
Dr. William Newman testified as an expert in pathology and as an expert in the examination and procedures of an autopsy. Dr. Newman performed the autopsy of Jim Walker. He related that Walker suffered from six gunshot wounds. Identifying each by letter, he related that wound “A” struck the victim from the rear between his fourth and fifth ribs. The bullet traveled at a slightly upward angle through the lung and then exited the chest. Wound “B” entered the chest from the front and exited by the spine at a downward angle. The bullet caused extensive damage to the heart. Wound “C” entered the left buttock, traveled in an upward angle and entered the abdomen causing extensive damage to the colon. Wound “D” was a superficial wound through the upper thigh. It traveled at a slightly upward angle. Wound “E” was a superficial wound to the triceps, and wound “F” was located in the victim’s upper arm or shoulder. In all, only wound “B” was from the front and at a downward angle. A blood test reflected marijuana and heroin use.

\ .ERRORS PATENT

The district court denied defendant’s motion for new trial on November *547 29, 2000, and sentenced defendant that same day. La. C. Cr. P. article 873 requires a twenty-four-hour delay between the denial of a motion for new trial and sentencing, unless the defendant waives such delay. The minute entry of sentencing does not reflect that the appellant waived the delay. However, the failure to observe the delay is deemed harmless error where the defendant does not challenge his sentence on appeal. State v. Collins, 584 So.2d 356, 359 (La.App. 4th Cir.1991). In this case no error is raised as to the defendant’s sentence and, accordingly, the failure of the trial court to observe the delay period is harmless error.

ASSIGNMENT OF ERROR NUMBER 1

The defendant argues that he has been deprived of his right to an appeal by the unavailability of a complete trial transcript.
The Louisiana Constitution, article I, section 19 (1974), provides in pertinent part: “No person shall be subjected to imprisonment or forfeiture of rights or property without the right of judicial review based upon a complete record of all evidence upon which the judgment is based.” Furthermore, La. C. Cr. P. article 843 requires that in felony cases all proceedings shall be recorded, including the testimony of witnesses.
In State v. Diggs, 93-0324 (La.App. 4 Cir. 6/29/95), 657 So.2d 1104, the unavailability of an officer’s complete testimony was found to necessitate a new trial. Id. at p. 3, 657 So.2d at 1105. In Diggs, the defendants were convicted of distribution of cocaine based upon alleged sales to undercover police officers. While three officers had participated in the undercover operation, only two of them testified at trial. No record of the cross-|examination8 or redirect exam, if any, was available as to one of the officers; only the beginning of his direct examination was transcribed. This court held that this omission necessitated a new trial because it could not be determined whether the missing testimony was substantial or inconsequential, or whether any objections or motions had been made during the officer’s testimony. Id.
In State v. Ford, 338 So.2d 107 (La.1976), the Louisiana Supreme Court stated:
Without a complete record from which a transcript for appeal may be prepared, a defendant’s right of appellate review is rendered meaningless. A slight inaccuracy in a record or an inconsequential omission from it, which is immaterial to a proper determination of the appeal, would not cause us to reverse defendant’s conviction. But where a defendant’s attorney is unable, through no fault of his own, to review a substantial portion of the trial record for errors so that he may properly perform his duty as appellate counsel, the interests of justice require that a defendant be afforded a new, fully-recorded trial.
338 So.2d at 110.
In Ford, the court found the omission of the testimony of four State witnesses, voir dire, and opening statements made it impossible for counsel, who was appointed for the appeal, to adequately review the record for errors. Id.
In the instant case, the trial transcript periodically notes that a statement was “inaudible.” Review of the transcript reflects that only short phrases or statements or a series of words were “inaudible.” The transcript as a whole is coherent and understandable. The overwhelming majority of the testimony of all witnesses was recorded, with no large omissions. The bases of the objections made by counsel as well as the *548 court’s rulings are clearly understandable.
1 flDefendant contends that he was prejudiced by multiple inaudible references during Officer Palmer’s testimony about the photographs of the bullet casings. Other than the general reference to Officer Palmer’s testimony regarding the photographs of the casings, defendant does not identify any particular portions of the transcript. Moreover defendant does not suggest how he is prejudiced. The testimony at issue is largely perfunctory and entails what each picture represents or relates to the manner in which the photograph was taken. In all, Officer Palmer’s testimony, despite the presence of a few inaudible words or phrases is quite intelligible.
Defendant further contends that he is prejudiced by an inaudible reference by Jane Walker regarding any plausible animosity towards the defendant. The testimony at issue is as follows.
Q. You have absolutely no reason to come in here except because of your brother, correct?
A. Yes.
Q. You have no animosity towards Mr. Weber?
A. (IA)
Q. Never had any problems with him before this incident?
A. No.
While it is conceivable that Walker’s inaudible response was “yes,” her other testimony suggests that she did not have any animosity towards the defendant. Furthermore, whether Jane Walker had any animosity towards the defendant is largely inconsequential as her testimony bore little if any on relevance to the defendant’s guilt or innocence.
Finally, defendant suggests that he is prejudiced by certain inaudible portions of Roy Brumfield’s testimony. Defendant contends that the pattern displayed by where the bullet casings were found suggest more than one shooter. Defendant further notes that “critical to appellate review is Roy Brumfield’s testimony about who else was present the evening of the shooting.” Defendant does not identify any portion of the transcript that | inlimits appellate review in regard to these to concerns. It should be noted, however, that Officer Leary testified that all the bullet casings recovered at the scene were fired by the same weapon. Accordingly, the supposition that there was more than one shooter is difficult to consider as plausible. Regarding Brumfield’s testimony of what other parties were present, his testimony is quite clear, that he observed two subjects but was only able to identify the defendant whom he observed fire the weapon. He also related that there were a number of other people in the courtyard.
Defendant further contends that Brum-field’s testimony is simply indecipherable. Although the majority of inaudible references in the transcript are found during Brumfield’s testimony, they are largely inconsequential and do not inhibit appellate review. The assignment or error lacks merit.

ASSIGNMENT OF ERROR NUMBER 2

Defendant alleges the evidence was insufficient to establish his guilt beyond a reasonable doubt. The Due Process Clause of the Fourteenth Amendment protects a person accused of a crime from being convicted unless the State proves every element of the offense charged beyond a reasonable doubt. U.S. Const. Amend. 14. This constitutional protection is the basis of a reviewing court’s duty to determine the sufficiency of the evidence used to convict a defendant. State v. *549 Monds, 91-0589, p. 4 (La.App. 4 Cir. 1/14/94), 631 So.2d 536, 539. In deciding whether evidence is constitutionally sufficient to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty L beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817, 820 (La.1987).
The appellate court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305, 1311 (La.1988); State v. Monds, at p. 4, 631 So.2d at 539. If the reviewing court finds that no rational trier-of-fact, viewing all the evidence from a rational pro-prosecution viewpoint, could have found the defendant guilty beyond a reasonable doubt, the conviction cannot stand constitutional muster. Mussall, 523 So.2d at 1311. When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden to establish every element of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Smith, 430 So.2d 31, 45 (La.1983).
The reviewing court, however, is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La.1992); Mussall, 523 So.2d at 1311. As noted by the Supreme Court, "the court is not to substitute its judgment of what the verdict should be for that of the jury, but at the same time the jury cannot be permitted to speculate if the evidence is such that- reasonable jurors must have a reasonable doubt.” Mussall, 523 So.2d at 1311 (citing 2 Charles Allen Wright, Federal Practice & Procedure, Criminal 2d, Sec. 467, at 660-661 & n. 23 (2d ed.1982)).
Defendant alleges that in light of the fact that Roy Brumfield did not identify the defendant as the perpetrator when he first viewed him, a rational jury should not have found the defendant guilty. Defendant adds that Brumfield’s explanation for not immediately identifying the defendant was h ¡¿hat he was scared, is implausible as he testified that he had no problems with the defendant and considered him an associate of sorts. Defendant misconstrues the record in this regard. Brum-field testified that he did not immediately identify the defendant because he considered acting on the victim’s behalf himself. Brumfield never testified that he remained silent out of fear. Brumfield did testify that he had nothing to gain by testifying and that in fact he was likely in jeopardy for doing so. In any event, it is well settled that credibility decisions by the jury should not be disturbed unless such finding is clearly contrary to the evidence. State v. Harris, 624 So.2d 443, 447 (La.App. 4 Cir.1993). A reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence. State v. Smith, 600 So.2d 1319, 1324 (La.1992). The critical inquiry for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. Id. Here the record evidence supports a finding by this court that the jury did not abuse its discretion in finding the defendant guilty.
Defendant further contends with respect to this assignment that inaudible responses by Brumfield require reversal. Defendant states that from the record it is impossible *550 to tell where Brumfield was standing when he observed the shooting, “whether he could see anything from inside the dark hallway where he and Lorenzo were shooting heroin,” and that it is impossible to tell whether it was possible for Brumfield to actually see anything. The transcript clearly reflects that Brumfield was standing by a bush, the location of which he identified from a photograph, when he observed the shooting. Defendant further notes that Brumfield testified at one point that he could see around the corner. Where the defendant was | ^standing and what he was able to see were clearly identified for the jury by Brumfield through the use photographs and diagrams of the area.
Finally, defendant suggests that a jury could not have excluded every reasonable hypothesis of innocence based on the testimony of Brumfield. The only such hypothesis suggested by defendant was that there was another shooter. As discussed with respect to assignment of error number one, the evidence failed to suggest that there was more than one shooter. Furthermore, no evidence was introduced to suggest that someone other than the defendant shot the victim. The assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER 3

Defendant contends the trial court erred in denying the motion to suppress defendant’s statement. The trial court is vested with great discretion when ruling on a motion to suppress. State v. Oliver, 99-1585, p. 4 (La.App. 4 Cir. 9/22/99), 752 So.2d 911, 914. Before a confession or inculpatory statement may be introduced into evidence the State must affirmatively show, beyond a reasonable doubt, that the confession or inculpatory statement was free and voluntary. State v. Rogers, 476 So.2d 942, 944 (La.App. 2 Cir.1985) (citing State v. Glover, 343 So.2d 118 (La.1977)). When credibility and weight of testimony relating to the volun-tariness of a confession for the purpose of admissibility are at issue, the trial court’s determination will not be reversed on appeal in the absence of a clear abuse of discretion. State v. Brown, 486 So.2d 876, 878 (La.App. 1 Cir.1986) (citing State v. Brumfield, 464 So.2d 1061 (La.App. 1 Cir. 1985)).
The record reflects that while the defendant was in custody on the night of the murder he was questioned regarding his whereabouts that |uevening, and he related that he was with his girlfriend. At the motion to suppress, Detective Polito testified that the officers who initially detained the defendant advised him of his rights. On appeal defendant contends that he was not advised of his rights; however, defendant presented no testimony or evidence at the hearing to refute the testimony of Detective Polito. Accordingly, there is nothing to indicate the trial court erred in denying the motion to suppress the statement.

ASSIGNMENT OF ERROR NUMBER 4

The defendant contends the trial court erred in denying the motion to suppress the identification. In State v. Broadway, 96-2659 (La.10/19/99), 753 So.2d 801, the Louisiana Supreme Court discussed the criteria for admissibility of identification evidence at trial:
The defendant has the burden of proof on a motion to suppress out-of-court identification. To suppress an identification, the defendant must first prove that the identification procedure was suggestive.... ' However, even when suggestiveness of the identification process is proved by the defendant or presumed by the court, the defendant must also show that there was a substantial *551 likelihood of misidentifieation as a result of the identification procedure.
Id. at p. 14, 753 So.2d at 812 (citations omitted).
Defendant argues that the lineups were suggestive because Detective Polito advised both Roy Brumfield and Jane Walker that Henry Weber was a suspect before showing them a photographic lineup. Defendant cites the following testimony by Detective Polito from the hearing on the defendant’s motion in support of his argument:
Q. Did you identify Henry Weber as a suspect before you showed Ms. Walker the photograph?
A. Yes
hsQ. Did you identify Henry Weber as a suspect before you showed Mr. Brum-field the photograph?
A. Yes.
Mthough neither question indicates that Detective Polito informed either Brumfield or Walker that Henry Weber was a suspect before presenting the lineups to them, and, admittedly, his testimony could be misconstrued on this point; the testimony that immediately followed eliminates any other interpretation.
Q. So Ms. Walker knew she was supposed to pick out the photograph of Ms. (sic) Weber?
A. No
Q. But she knew the suspect was Mr. Weber?
A. I don’t know whether she did or not.
Q. But didn’t you just say you informed her that the suspect was Mr. Weber.
A. No, I didn’t.
There is nothing to suggest the identification procedure was suggestive. Furthermore, the record reflects that both Roy Brumfield and Jane Walker were well acquainted with the defendant prior to the shooting which substantially diminishes the possibility of misidentifieation.

ASSIGNMENT OF ERROR NUMBER 5

Defendant contends the trial court erred in granting the state’s motion in limine to enjoin the defense from questioning Roy Brumfield regarding any prior use of heroin. La. C.E. article 609.1(B) provides that generally, “only offenses for which the witness has been convicted are admissible upon the issue of his credibility ...” and that inquiries as to such matters as arrests are not admissible upon the issue of credibility. However, defendant |1ficontends that he was denied the ability to question Brumfield’s ability to perceive events and was therefore denied his constitutional right to confront his accuser. The record reflects that the Roy Brumfield admitted being under the direct and immediate influence of heroin at the time he witnessed the murder. The witness openly testified that he had used heroin intravenously only moments before the shooting. Furthermore, Brumfield essentially admitted to being a heroin addict when he related that he admitted himself to Charity Hospital to be treated for substance abuse. In ruling on the motion the trial court limited its application to the defense bringing up any arrests and specifically noted that the motion would not limit defense counsel from questioning a witness’s ability to observe or remember. Furthermore, the record reflects that defense counsel cross-examined the witness regarding the effects of the heroin on him on the night in question. Accordingly, the assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 6

Defendant contends the trial court erred in granting the state’s motion in limine to prevent the defense from pre *552 senting evidence that the police tampered with or planted evidence. Defendant alleges that he was prevented from introducing evidence that the defendant was not holding the sock containing the bullets and that it was not found anywhere near his person. The record reflects that defense counsel cross-examined Officers Young, Johnson and Palmer. Defense counsel also cross-examined the crime scene technician who recovered the evidence regarding the recovery of the sock and the alleged discrepancy between the report and the officers’ testimony. Defendant does not suggest here, nor did counsel offer any indication when the motion was heard, as to what evidence he sought to introduce was |17excluded by virtue of the motion. Absent some indication as to what evidence, if any, that the defense was precluded from introducing, there is nothing for this court to review. The assignment is without merit.

ASSIGNMENT OF ERROR NUMBER 7

Defendant alleges that the prosecutor’s reference to the defendant’s decision to proceed to trial and the trial court’s response warrant reversal. The prosecutor began his opening statement as follows: “Now, ladies and gentleman, let me tell you, from the beginning, this is not a perfect case. If it was a perfect case, Ladies and Gentleman, we wouldn’t be here. Would have pled guilty or would have done something else.”
An objection was entered and the trial court responded, “We all know what the defendant did. Come on let’s go.”
Defendant contends that the prosecutor violated his right to a jury trial by implicating his failure to plead guilty. Certainly, “[a]n accused has the absolute right not to plead guilty.” State v. Jones, 98-1165, p. 4 (La.App. 3 Cir. 2/3/99), 734 So.2d 670, 672. Here, however, for whatever reason, the prosecutor simply chose to downplay the strength of the State’s case and in doing so noted that the defendant had pled not guilty. The comment is a far cry from that in Jones where the prosecutor’s closing arguments chastised the defendant for not taking responsibility for his actions by pleading guilty in contrast to his co-defendant, who had pled guilty.
As to the comment by the judge, defendant contends that the remark violated the no-judge-comment rule of article 772 of the Code of Criminal Procedure and was prejudicial to him. Article 772 provides:
The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any 118witness, or giving an opinion as to what has been proved, not proved, or refuted.
Defendant contends that the judge essentially proclaimed the defendant guilty. Looking at the comment outside of its context, the argument could be seen as having merit; however, in its context the comment clearly referenced the fact that everyone was aware that the defendant had pled not guilty. The comment was also a clear effort by the trial court at chastising the prosecutor for what was a poor choice of a topic for discussion in his opening statement, which properly should be limited to a discussion of the evidence to be presented.
In any case, the record reflects that trial counsel failed to object to the trial judge’s remark, which precludes appellate review of the assignment of error. La. C. Cr. P. art. 841; State v. Michel, 422 So.2d 1115, 1121 (La.1982); State v. Warner, 93-0216, p. 5 (La.App. 4 Cir. 7/27/94), 641 So.2d 684, *553 686; State v. McLaren, 619 So.2d 664, 666 (La.App. 4th Cir.1993).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER 8

Defendant contends the trial court erred in denying the motion for new trial. In order to obtain a new trial based on newly discovered evidence, the defendant has the burden of showing (1) the new evidence was discovered after trial, (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence, (3) the evidence is material to the issues at trial, and (4) the evidence is of such a nature that it would probably have produced a different verdict. State v. Hammons, 597 So.2d 990 (La.1992); State v. Knapper, 555 So.2d 1335 (La.1990). The trial court has |13much discretion in ruling on a motion for new trial. Id. However, if the trial court exercises this discretion arbitrarily and the judgment is unjust, the reviewing court should set aside the judgment and order a new trial. Id.
At the hearing on the motion for new trial, Donzola Williams testified that in June of 2000, she heard rumors that her brother, Antonio Williams, had been involved in a murder of a subject named “Winkie” in the Florida Housing Project. She related that she questioned her brother about it and that he told her that “He got the nigger.” Ms. Williams interpreted his brother’s statement to mean that he had killed him. Williams related that “Winkie” was trying to get him and that he got him first. Antonio Williams also related to his sister that he had been questioned by the police in connection with the murder. Sometime near the time that the defendant was being sentenced, Ms. Williams learned from the defendant’s sister that he had been convicted of murder. Ms. Williams also related that she learned that the victim, Jimmy Walker, was also known by the moniker, ‘Winkie.” Ms. Williams’ brother was himself the victim of a homicide on May 14, 2001.[1]
The state argued at the hearing on defendant’s motion that the testimony was of little import in that Antonio Williams had been a suspect in the crime all along and that Roy Brumfield’s testimony was that there were two subjects involved in the shooting. Furthermore, the trial court related in denying the motion that she found the testimony “tentative, speculative, and unpersuasive.” Given that the State’s case was that the defendant was not alone when he killed Jim Walker the testimony of Donzola Williams, even if Incredible would not exculpate Henry Weber. Accordingly, the trial court did not abuse its discretion in denying the motion.

ASSIGNMENT OF ERROR NUMBER 9

Defendant contends the trial court erred in admitting hearsay evidence. Officer Young testified over defense objection that while at the crime scene he spoke to approximately three witnesses who while refusing to give their names identified a male named Henry who lived on Dorgenois Street as the perpetrator. Officer Young further testified that he determined that the defendant lived on Dorgenois and that he believed he was the individual referred to by the witnesses.
Hearsay is a statement made out of court offered as evidence in court to prove the truth of the matter asserted by the statement. La. C.E. art. 801(C); State v. Everidge, 96-2665, p. 7 (La.12/2/97), 702 So.2d 680, 685. Hearsay is excluded be *554 cause the value of the statement rests on the credibility of the out-of-court asserter who is not subject to cross-examination and other safeguards of reliability. In order to fall within the definition of hearsay, the statement must be offered to prove the truth of the statement’s contents. Everidge, 96-2665 at p. 7, 702 So.2d at 685.
Defending the admission of the testimony, the State argues that the testimony was properly admitted pursuant to the res gestae exception to the hearsay rule as it explained the course of action taken by Officer Young during the first few hours of the investigation. See State v. Granier, 592 So.2d 883, 888 (La.App. 4 Cir.1991).
However, in State v. Hearold, 603 So.2d 731 (La.1992), the Louisiana Supreme Court explained:
| Generally, an explanation of the officer’s actions should never be an acceptable basis upon which to admit an out-of-court declaration when the so-called “explanation” involves a direct assertion of criminal activity against the accused ... Absent some unique circumstances in which the explanation of purpose is probative evidence of a contested fact, such hearsay evidence should not be admitted under an “explanation exception.” The probative value of the mere fact that an out-of-court declaration was made is generally outweighed greatly by the likelihood that the jury will consider the statement for the truth of the matter asserted.
Id. at 737-38.
In this case, Officer Young’s testimony was impermissible hearsay, the effect of which must be assessed under the harmless error standard of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The erroneous admission of hearsay evidence mandates reversal of a conviction only when there is a reasonable possibility that the evidence might have contributed to the verdict. State v. Wille, 559 So.2d 1321, 1332 (La.1990). Factors to be considered include the importance of the evidence to the State’s case, the presence or absence of additional corroboration of the evidence, and the overall strength of the State’s case. Id.
Although the State’s case rested primarily on the testimony of a single eyewitness, his testimony was essentially un-controverted. Even though Brumfield was not immediately candid with the police, it is evident that the jury found the witness’ defendant’s testimony credible. Furthermore, the defendant’s unexplained presence at the scene of the crime shortly after the police had departed, his possession of a box of bullets of the same caliber as the murder weapon, and his attempt at flight were also no doubt persuasive evidence to the trier of fact. Furthermore, Roy Brumfield’s account of the shooting, that the victim went down upon the first shot and did not rise again, was corroborated by autopsy in that all but one bullet entered the victim’s body at an upward angle. The defendant did not present an alibi asj^to his whereabouts at the time of the crime, nor was any testimony offered to indicate that Roy Brumfield had any motive to testify falsely. The inadmissible hearsay, although it identified the defendant as the alleged perpetrator, was brief and was without elaboration. Accordingly, one can conclude that the admission of the statement did not contribute to the verdict, which was strongly supported by other evidence.

CONCLUSION

Based upon the foregoing, we hereby find no reversible error in the proceedings *555 below. We therefore affirm the conviction and sentence.

AFFIRMED.

. Although the State argues in passing that the evidence was discoverable before trial, there is little to indicate that the failure to unearth Donzola Williams as a potential witness is attributable to a lack of diligence by the defendant.